<div style="text-align:center">FOLTS vs. HUNTLEY.</div>

A *demise* to A. B., his *heirs*, and *assigns*, for such *term of time* as he pays rent
&c., he on his part, *covenanting* for himself and his *heirs*, &c., to pay rent
and perform covenants, is a perpetual lease. The lessor, but not the lessee,
may *elect*, on default, to consider it forfeited.

The appropriation of a *mill privilege*, (the subject of a *demise*, by the canal
commissioners, is not an *eviction* by title paramount, so as to relieve the les-
see from the payment of rent and performance of covenants; being en-
tled to compensation, the premises cannot be deemed as taken from the
lessee by title paramount.

ERROR from the Onondaga common pleas. Folts sued
Huntley in a justice's court, and declared in *covenant* on cer-
tain articles of agreement, bearing date 7th June, 1814, exe-
cuted under seal by the parties, which, after reciting that Hunt-
ley, for the benefit of a saw-mill erected by him, had diverted
the water of the *Limestone creek*, along the bank thereof, *on the
land of Folts*, proceeded as follows : " Now therefore, in con-
sideration and upon condition of the payment of the rent here-
inafter mentioned, on (the part of) the said Huntley, (to be
paid,) the said George Folts doth hereby for himself, his heirs
and assigns, *lease* and *demise* to the said Timothy Huntley, his
heirs and assigns, the use of the water in said creek, with so
much of the bank as may be necessary to continue the diver-
sion of the water as aforesaid, with the privilege of digging
gravel in the bank of the said creek, for the purpose of repair-
ing and improving his dam and water works, for *such term of
time,* and upon the express condition, that if he, the said Tim-

othy Huntley, his heirs or assigns, shall pay, or cause to be paid to the said George Folts, his heirs or assigns, annually and every year, on the first day of March, the sum of six dollars, from and after the first day of March, 1813; and shall also, for the accommodation of the said Folts, his heirs and as-signs, make and keep in repair a bridge across the said Hunt-ley's upper floom, and a road from thence through the bank to the flat lands; and shall also keep in repair a good fence on the bank the whole length of the said race-way on the said Folt's land; and shall build his dam across the said creek against and at the place where the upper floom now stands, and shall not so build his dam as to raise the water more than two feet above low water mark. And the said Timothy Hunt-ley doth hereby, for himself, his heirs or assigns, covenant and agree to and with the said George Folts, his heirs and assigns, to pay the rent above reserved, to build," &c. *covenanting* to perform all and singular, the premises above specified on his part to be performed. The plaintiff's declaration was for breaches of the several covenants contained in the agreement above set forth. The defendant pleaded the general issue, and attached to his plea a notice of various matters intended to be given in evidence on the trial. The justice gave judg-ment for the plaintiff for $13 damages, and the defendant ap-pealed to the common pleas. On the trial in the common pleas, the plaintiff claimed to recover damages only for such breaches of the agreement as had happened since 1st March, 1828, and proved that since that time Huntley had not main-tained the bridges, or kept the road and fences in repair speci-fied in the agreement, and gave evidence of the amount of damages sustained by him by reason thereof. The *omissions* of Huntley were proved by his admissions; and in the same conversation he said that *the state* had taken away his water, and he did not consider himself under any obligation to keep the bridges, road and fences in repair; that the mill had run for two or three years after the canal commissioners took the water, but did not do much business, and that for two years it had not run at all. The plaintiff proved an admission of Hunt-ley, that he had *sold his privilege* to the state, and proceeded to inquire as to the amount received by him, but the evidence

was objected to, and overruled, and it subsequently appearing that the transfer made by Huntley was *in writing*, the court decided that the writing must be produced, and that the evidence of the admissions of a transfer must be excluded from the consideration of the jury. The plaintiff then offered in evidence a *copy* of a *receipt*, purporting to be signed by Huntley, certified by the *deputy comptroller* of the state, under the *seal of office* of the comptroller, as being on file in the comptroller's office, by which, under date of December 9, 1825, Huntley acknowledged the receipt of $1000 of one of the canal commissioners, in full for the water of the *Limestone creek*, taken to feed the Erie canal, whereby his saw-mill was deprived of water, and rendered useless. This evidence was objected to, and overruled. It appeared that the water of the Limestone creek was in 1825 taken to feed the Erie canal, above where Huntley was to take it, and that since the 1st March, 1828, his mill had been useless. The plaintiff having rested, the defendant moved for a *nonsuit*, on the grounds, 1st. That the contract was *conditional*, and that when Huntley ceased to pay rent the contract was at an end; and 2d. That the water of the creek having been appropriated by the canal commissioners, the statute under which it was thus taken disannulled the lease or agreement, and discharged Huntley from the performance of his covenants. The court sustained these objections, and nonsuited the plaintiff; judgment was entered for the defendant, and the plaintiff sued out his writ of error.

*S. L. Edwards*, for plaintiff in error. It was not in the power of Huntley to put an end to the lease, by refusing to perform the covenants on his part. The demise was *upon condition* that he paid the rent, &c. but it was a condition only to be enforced by Folts; it was for his benefit, and not for the benefit of Huntley. The covenants of Huntley were absolute without exception, and even had the creek taken a new channel, or been dried up, he would have remained liable. *Woodfall*, 326. 1 Cruise, 257. 6 T. R. 650, 750. 3 Johns. R. 44. The lease was not annulled, nor were the covenants in it abrogated by the appropriation of the waters of the creek by the

canal commissioners ; so long as the deprivation of the rights of the lessee could not be attributed to the act of the lessor, the lessee remained liable to his convenants. 2 Comyn on Cont. 529. 6 Mass. R. 63. 16 id. 238. Even a court of chancery would not grant relief in such a case. 4 Taunt. 45. 18 Vesey, 116. Besides, Huntley was entitled to compensation from the state for the destruction of his water privileges, *Constitution of the State*, art. 7, § 7, Laws of 1817, p. 302, § 2, 6 Cowen, 526, and the fair presumption is, that he has received such compensation, and if not, he may still demand it ; on this ground he should be held liable. He could not be discharged from his convenants by the operation of an act of the legislature passed subsequent to the making of the covenants. Woodfall, 331. 3 Mod. 39. The interruption in the enjoyment of Huntley's rights is not like the case of an eviction by title paramount, which supposes that the lessor had no right to demise, and therefore the lessee is discharged from payment of rent. Here an unforseen event has occurred, which the lessee has not guarded against by proper convenants ; this case is therefore within the reason of the cases above cited.

*J. Watson*, for defendant in error. There is nothing shewing the *term* during which the lease was to continue, except during the time that Huntley paid the rent. The demise is for *such term of time*, and upon the express condition that the lessee pay the rent, &c. As long therefore as Huntley paid the rent and performed the other conditions, the lease continued, and no longer. No convenant shall be construed to a greater extent than the words import *as to time.* 2 Saund. 213. The taking of the water of the creek by the canal commissioners amounted to an *eviction* by paramount title— it was taken under the sovereign authority of the state. An eviction by title paramount always excuses payment of rent. 3 Kent's Comm. 371. If the tenant be deprived of the thing letten, the obligation to pay rent ceases, because such obligation has its force only from the *consideration,* which was the enjoyment of the thing demised. Gilbert on Rents, 145. 8 Cowen, 727. An interruption of the *enjoyment* of the premises will suspend the rent. 4 Dall. 124. It would be intoler-

able that Huntley should remain liable to the payment of rent for premises that he cannot enjoy. If Folts has received damage by the appropriation of the waters of the creek, let him urge his claim against the state.

*By the Court* NELSON, J. The first question in this case is whether the defendant could avoid the lease by refusing to fulfil the convenants ; or, in other words, whether the performance of the convenants were at his option. The intention of the parties, to be gathered from a view of the whole agreement, the criterion by which to give a construction to any part, giving effect, if consistent and reasonable, to the whole ; 1 Selw. 339 ; and if there be any ambiguity, such construction must prevail as is most strong against the covenantor, for he might have expressed himself more clearly. The principle has been applied to the construction of leases. *Webb* v. *Dixon,* 9 East, 15.

Now yielding to the interpretation urged by the defendant, there would be no mutuality in the agreement, or consideration to the plaintiff, for the benefit would be all on one side, and the obligation on the other ; and though this might not make a covenant void *ab initio, Shubricks* v. *Salmon,* 3 Burr. 1637, *Lowe* v. *Peers,* 4 id. 2225, it will at least require strong and express provisions to induce the court to come to that conclusion. I have no doubt that it was the intention of both parties, as well from the subject matter and nature of the agreement as from a reasonable sense of the words themselves, that each was to be bound. The agreement was inartificially drawn ; but the true reading is, that Folts covenants to lease to Huntley the use of the waters in Limestone creek, with so much of the bank, &c. for the time and upon the condition that Huntley pays the rent, keeps in repair bridges, &c.; and then follows an express covenant on the part of Huntley, his heirs, &c. to Folts, his heirs, &c. to pay the rent, build and keep in repair the bridges, &c.

The true construction of this agreement is given in the case of *Canfield* v. *Westcott,* 5 Cowen. 270, and the cases in the note (*a*), to wit, that on a failure to pay rent, or to build and keep in repair bridges, &c. on the part of the defendant, the

plaintiff might consider the lease forfeited, and re-enter by action of ejectment, or waive the forfeiture and sue, as he has done here, upon the express covenant.

There can be no doubt the lease is a perpetual one. It is by Folts, his heirs, &c. to Huntley, his heirs and assigns, for such time as he shall pay the rent and fulfil other stipulations. So long, then, as Huntley, his heirs or assigns, pay the rent and comply with these stipulations, they are entitled to all the rights and privileges under it; and we have shewn that Folts can enforce the payment of rent, &c. upon the *express covenant* of Huntley, and that it is not at the election of the latter to put an end to it. It therefore necessarily follows that the lease continues until put an end to by the mutual agreement of the parties to it, or till the plaintiff may elect to claim a forfeiture in the default of the lessee to pay, &c.

In the next place, it is contended that the diversion of the Limestone creek by the canal commissioners, to be used as a feeder to the Erie canal, being under the authority of law, is to be considered in the nature of an eviction by paramount title, and therefore a bar to the suit for rent, or for the breach of any other covenant; and so the court below decided. The term *demised* in the lease undoubtedly implied a covenant of quiet enjoyment, at least during the life of the lessor; *Woodfall*, 243; Shep. T. 160; and eviction under a superior and lawful title of the whole or any part of the demised premises, would constitute a valid defence. 1 Selw. 390. Cro. Eliz. 214. Johns. Dig. 440, tit. Covenant, (c). *Pendleton* v. *Dyett*, 4 Cowen, 581. It is obvious, however, for many reasons, that this act of the canal commissioners, though lawful, is not an *eviction* within the meaning or spirit of the term, and can afford no defence to this suit. It was not inconsistent with, but entirely independent of a perfect right and title in the plaintiff to lease the demised premises, and rested upon great public considerations, paramount to all and every title to the property. Nor is the reason upon which this defence is founded applicable, to wit, that rents shall not be paid after the premises demised are gone. It is a fundamental principal that private property cannot be appropriated to public purposes without a just compensation; and accordingly the statute em-

powering the commissioners or their agents " to enter upon and use all and singular any lands, waters and streams necessary for the prosecution of the improvement," &c. provided compensation for any injury produced to any individual by the exercise of this power.   If the defendant has not already obtained his remuneration, (which he probably has,) the law affords him a perfect remedy, to the extent of the injury which his property has sustained by the diversion of the stream ; he, and not the plaintiff, can pursue it.   On another ground, it is not in the power even of the legislature to impeach or disannul the covenants in this case.   *Sturges* v. *Crowninshield*, 4 Wheaton, 122, 192, 209.   *Mather* v. *Bush*, 16 Johns. R. 233.

Judgment reversed, and *venire de novo* awarded.