## Case No. 15,441a.

### UNITED STATES v. INLOTS.

[2 Am. Law Rec. 577.]

Circuit Court, S. D. Ohio. 1873.[1]

EMINENT DOMAIN — EFFECT OF TAKING LEASED PROPERTY—RIGHTS OF LANDLORD AND TENANTS —RULE AS TO COMPENSATION—CONSTRUCTION OF LEASES—PAROL EVIDENCE—OHIO STATUTES.

[1. Under the Ohio statute relating to the condemnation of lands, which requires that all parties having any interest therein shall be made parties, and that their rights shall be adjudged in the proceedings, the taking of lands which are subject to an unexpired lease, or in which interests are held by contract with the owner, puts an end to all the rights and obligations as between the parties. But the rights of the parties must be determined by the legal effect of their leases or contracts as they stand at the time of condemnation.]

[2. Where, after the expiration of a five-years lease, the tenant sought a renewal thereof, but this was refused on the ground that the property would probably be taken by the United States for public use, and the tenant was thereupon allowed to remain in possession without any definite understanding, held, that he could not be regarded as having entered upon a new term of five years, or even for a single year, and hence, on the condemnation of the property, was not entitled to compensation for any unexpired term under the lease.]

[3. An agreement for renting property for less than three years, with a clause declaring that the agreement shall be null and void in case the premises are condemned for public use, ceases and determines when such condemnation takes place; and the tenant has no right, as against his landlord, to hold the property thereafter.]

[4. Where a party claimed a right in premises which were being condemned for the use of the United States by virtue of a lease not executed with the formalities required by law, held, that it was competent to show that he went into possession under the instrument, with a parol agreement that he would claim no right under it as against his lessor, but that it was to be used only as the foundation of a claim against the United States in case the property were condemned.]

[5. The Ohio statute prescribing the formalities required in the execution of deeds, mortgages, leases, etc., contains a proviso that nothing therein shall affect a lease for a term not exceeding three years. Held that, where a tenant went into possession under a paper not executed with the required formalities, but which merely recited a verbal lease for a term of five years, such lease could not be considered as a valid lease for three years, but was wholly void. Richardson v. Bates, 8 Ohio St. 257, followed.]

[6. Where property in Ohio was condemned by the United States for public use, the whole of the property being taken, held, that the measure of compensation, both under the constitution and the laws and decisions of Ohio, was the fair market value at the time of condemnation, not as ascertainable in cases of forced sale, but as upon a sale by the owners themselves. But it seems that, if the condemnation take place during a temporary depression due to a stringency in the money market, the value may be estimated as of the period immediately preceding such depression.]

[7. The rule that where part of certain property is condemned damages must be given not only for the land taken but for the injury to that not taken by reason of the severance, is inapplicable to a case where a livery stable keeper owned stables, etc., on one side of an alley, and leased a building on the opposite side for use in connection with his business, and the leased property was condemned. In such case, only the value of the lease can be awarded to him.]

[8. Where leased property is condemned, the lessee is entitled to so much out of the market value of the property as his unexpired term is fairly worth, over and above the amount of rent he is bound to pay.]

[This was a proceeding brought by the United States to condemn certain lots in Cincinnati, Ohio, for use as the site of a public building. The case was heretofore heard on demurrers to the petition, and on

---

[1] [Affirmed in 91 U. S. 367.]

motion to dismiss the same. Case No. 15,-441.]

SWING, District Judge (charging jury). After the patience with which you have listened to the testimony in the case, and to the arguments of counsel, it only remains for the court now to give you the rules of law which shall govern you in your examination of this testimony, for the purpose of enabling you to arrive at correct conclusions as to the rights of the several parties in the case. In this particular branch of the case submitted to you now, there are seven different claimants for compensation and damages, upon each of whose claims you will be required to pass. First is that of Mr. Bodman, who claims compensation for fee; second, that of J. A. Smith, J. B. Brigel, Fox Brothers, John Lentz, Hiram B. Davis, and Wringerman. The last six claim an interest in the property as lessees. The claim of the owner in fee is for the value of the ground and buildings; that of the lessees for the value of their unexpired terms, for improvements made to the buildings, for fixtures constructed for the purpose of their business or trade, for movable articles or property used by them in their business and for damages they have sustained by reason of being compelled to move from the premises. Embraced in this latter claim is the cost of removal, damages sustained in business, for depreciation in the value of stock, for loss of goodwill, and the difference in the rents paid by them for the premises they now occupy, and those they will be able to get. These are the respective claims of the several parties against the government. The government claims that it is liable only for the value of the property taken as an entirety; and the jury, by their verdict, must apportion to the several claimants the value of their several interests therein. On behalf of the owners in fee it is insisted that the lessees have no legal ownership, or right to any portion or interest in said property, and that, as to some of them, they have no leases or contracts for the occupancy of said premises. As to those that have leases, it is said they are void, because some of them are not in conformity with the statutes of Ohio, and because others contain an express proviso that if the property is taken by the government, they shall be null and void; and, further, that the appropriation of the property by the government terminates all rights that previously existed, growing out of said contracts or leases, if any there should have been.

As to the effect of the condemnation of property upon the relation of landlord and tenant, upon the authorities abstractly, there may be some doubt. In the case of Folts v. Huntley, 7 Wend. 215, it was held by the supreme court of New York that an appropriation did not relieve the tenant from the payment of rent and performance of covenants. And such was the ruling of the supreme court of Ohio in the case of Foote v. City of Cincinnati, 11 Ohio, 411. It may not be an eviction by title paramount, and yet it is the assertion of a right by the government to the property as against both landlord and tenant, by which the landlord is deprived of all control of the property, and by which the tenant is turned out of the possession thereof; and it becomes unlawful for the landlord to in anywise control the premises, or for the tenant to further occupy them, and he cannot, therefore, enjoy the consideration of his covenant. And it is said by the supreme court in Siebern v. Nicholson, 13 Wall. [80 U. S.] 156: "Whenever the property was lost to the owner by the paramount act of the state, which neither party anticipated, both are put an end to." And it is said by Kent, in the third volume of his Commentaries (page 463), that "the obligation of a tenant to pay rent ceases when the consideration ceases, and which was the enjoyment of the land." And Taylor, in his Landlord and Tenant (page 383), says: "If, therefore, a lot of land or other premises under lease is required to be taken for city or other public improvements, the lease, upon confirmation of the report, becomes void." Without attempting to analyze the nice distinctions which some of the books have taken in regard to the effect of eviction under title paramount upon the covenants of a lease, we may say that much of the reasoning of the authorities which hold that it has not the effect to discharge the tenant from the payment of rent is based upon the fact that only a portion of the property had been taken; and yet there are two cases cited, one from New York and the other in Ohio, in which all the interests of the tenants were taken and appropriated. Without attempting to decide whether this would come within the reasoning as applicable to evictions by title paramount, or the discharge of a party from the doing an act which it was lawful for him to do at the time he agreed to do it, and which afterward became unlawful, we may say in this proceeding that our statute requires that the names of the owners and of all persons having any interest, legal or equitable, in the property, shall be set forth in the petition, and the owner or owners shall be summoned. Under this statute all these parties have been brought before the court. The court has jurisdiction of them, and they have consented that their rights may be fixed and adjudged by this tribunal. Whatever, therefore, might be the legal effect of an appropriation upon the relation of landlord and tenant, and upon the covenants of the lease, the effect of the verdict of the jury in determining their several rights, and the judgment of the court upon the verdict, must of necessity put an end to these so far as it relates to any future rights or obligations arising out of the contracts as between landlord and tenants. But the present rights of the

parties, we think, must be determined by the legal effect of their leases as they now stand.

These leases are of two characters—written and unwritten. The first section of the statute of Ohio in regard to deeds and mortgages requires that the instrument by which lands shall be conveyed or otherwise affected or incumbered shall be signed and sealed by the grantors, etc., and the signing and sealing properly acknowledged. It is admitted by the parties in this case that but one lease is in conformity with this section of the statute. The ninth section of the statute provides that nothing in the act shall affect any lease of school or ministerial lands for any term not exceeding ten years, or of any other lands not exceeding three years, or to require such lease to be attested, acknowledged, or recorded; so that, if there be in this case any lease for a term not exceeding three years, it is not required to be signed, acknowledged, attested and recorded.

The lease of Mr. Davis is the only one executed in accordance with the provisions of the first section of this statute. What is the legal effect of leases not executed according to the terms of the statute? It is contended by Mr. Bodman that there was no verbal or written agreement with two of these tenants; that they are simply remaining there as tenants at will, or tenants by sufferance. I speak of Mr. Smith and Mr. Wringerman. If there is no agreement existing between Mr. Bodman and Mr. Smith for the use and occupancy of these premises for any particular length of time, he has no term in this estate. So with Mr. Wringerman. There has been nothing that I remember brought before this jury of a definite character (but of this the jury must be the judges) in regard to the time, as proven before them, when Mr. Wringerman commenced the use and occupancy of these premises, what the original contract was and when it ended, and if he entered upon a new term. If, originally, he had been a tenant for one year, and had been permitted by the landlord to enter upon a second year, he would have been entitled to the tenancy from year to year.

And so with Mr. Smith. If you find from the testimony in these cases that there was a definite agreement between the parties, originally, that the tenants should have it for one year, beginning with a certain day and ending with a certain day, then, if they were permitted to enter upon the second year, they would be entitled to hold till the expiration of that year. In the case of Mr. Smith it is admitted that he entered upon the possession of the premises in 1858, and remaining in them till 1867. When he made a contract with Mr. Bodman for a term of five years, at the close of that term he endeavored to secure from Mr. Bodman a lease for another term, but that Mr. Bodman declined to give it, and that he remained there without any agreement as to a certain length of time in which he should continue in possession of the premises; that he had spoken to Mr. Bodman several times about it, and that Mr. Bodman, taking into consideration the uncertainty of his being able to hold the property, supposing it might be appropriated by the government for public buildings, declined to encumber his property with any agreement or lease whatever, but that the tenant remained there simply to await events that might follow. He could not be said to have entered upon a new term of five years or of a single year. He therefore had no right whatever in the term, so far as the lease was concerned.

So far as the Fox Brothers' lease is concerned, that would be good under the statute of Ohio if it had merely been a verbal one, for it is for a period of not exceeding three years. But you must take this contract as it reads, and determine the rights of these parties by giving to each and every part of the contract full force and effect. The agreement between these parties contains a clause that it should be null and void in case the government of the United States or the state of Ohio should condemn the property for public use. It may be said to be a proviso, and, strictly and technically speaking, we may not give to the proviso the same force and effect that we would to a condition. Still, taking this paper as it reads, it is free from ambiguity, and expresses clearly the intention and agreement of the parties that it should be null and void in case the property should be condemned for the use of the government of the United States or for the state government. Therefore, as far as this lease is concerned, it in nowise, as against Mr. Bodman, gives any claim or right to hold this property beyond the period at which it was condemned, either for the use of the United States or for the state. If he had rented it from year to year, and the party had occupied it the first year, and had entered upon the second year, he might be entitled to hold it to the close of the year. But it is not of that character. It is a renting for an entire term of three years, and, so far as this contract is concerned, it must expire at the time of the condemnation of the property.

So far as the lease of Mr. Brigel is concerned, that, in the opinion of the court, occupies no better position than the lease of Fox Brothers. While it is true that this lease is more formal than that of Mr. Fox, still it is not in accordance with the statute of Ohio, except the attestation and signing; and besides this, while I recognize very fully that an instrument can not be explained or contradicted by parol evidence, still you may always show by parol evidence the circumstances under which the instrument was executed. The supreme court of the United States says that it becomes the duty of the court and jury, in endeavoring to understand and determine the proper character of a paper, and the rights of parties growing out of

it, that they should be placed precisely in the condition that the parties were at the time the paper was executed. This enables us to better determine the rights of the parties. Now, if the testimony in the case showed that Mr. Brigel went into possession of this property prior to the execution of this instrument, and that after he had been in possession for some time he had applied for a lease, and it had been refused him; or if he had entered into possession without a lease, and afterward applied to Mr. Bodman for one, and agreed with Mr. Bodman that the only use for which he wished that paper was that he might use it, as against the United States in case this property was condemned; that he would make no claim whatever against Mr. Bodman for any rights under or growing out of it, Mr. Bodman is not in law bound for the use of this property by Mr. Brigel.

That leaves but a single lease, namely, that of Mr. Lentz, respecting which I have more difficulty, and the ruling I shall make in regard to it is one of which I have some doubt. The paper is not signed at all. It merely recites that a verbal lease has been made for five years. Now, a verbal lease for five years is certainly not in conformity with the statute. The difficulty grows out of this state of facts. It is a verbal contract. The party is put in possession under and by virtue of its terms; the possession is referable solely to it. Whether, under the statute of frauds, possession of property taken by virtue of a lease takes it out of the statute which requires that all instruments for the encumbrance of property, or for any interest therein shall be in writing, or not, is not determined. I am forced, however, to submit to a decision of the supreme court of Ohio. The federal courts in all cases touching the validity and construction of statutes relating to realty must be governed and controlled by the construction given such by the supreme court of the state. This case comes within the decision in the case of Richardson v. Bates, 8 Ohio St. 257, which holds such a lease to be void.

Mr. J. G. Douglas: I would ask the court, in that case, whether the lease is not a lease for three years, and if he should not be paid for a three-year lease as one outside the statute?

COURT: In my examination of the case I tried to treat it as such. If the lease had been for three years, I should, undoubtedly, hold it good. But the lease is for five years, and, although the party went into possession under a verbal lease, if he is to derive any benefit from the lease whatever he must derive it according to the terms of the contract itself. If he has made a lease for five years, I do not think it is in the power of the court, and I do not think the law would justify me in saying that, so far as it was a lease for five years, it was null and void, yet hold it good for three years; it would be a change of contract, a change of obligation of the par-

ties, which I do not think we can do. The lease of Mr. Davis is in conformity with the statute.

But disposing of the question of leases does not dispose of all questions of the rights of these various parties under them as against the government, or in relation to the improvements in fronts, or as to fixtures or other items which I reserve till I come to another part of the case.

We come next to a very important question in this case, and that is the rule of damages or compensation as applied to the owner in fee, and also to the lessees as to any rights they may have against the government or against Mr. Bodman. Without going fully over the arguments of the learned counsel,—for I cannot command the time to do so,—I will say the language of the constitution of the United States is: "Nor shall private property be taken for public use without just compensation." The language of the old constitution of the state of Ohio was: "Private property ought and shall ever be held inviolate, but also subservient to the public welfare, provided a compensation in money be made to the owner." [Const. 1802, art. 8, § 4.] The language of the new constitution is: "Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war, or other public exigency imperatively requiring its immediate seizure, or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner in money, and in all other cases where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money, and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner." [Const. 1851, art. 1, § 19.] In discussing the clause of the federal constitution in the case of Chesapeake & O. Canal Co. v. Key [Case No. 2,649], Judge Cranch says: "Just compensation means a compensation which would be just in regard to the public, as well as in regard to the individual." And in the case of Calder v. Bull, 3 Dall. [3 U. S.] 386, Judge Patterson says: "Highways are run through private grounds; fortifications, light-houses, and other public edifices are necessarily sometimes built upon the soil owned by individuals. In such and similar cases, if the owner should refuse voluntarily to accommodate the public, they must be constrained, as far as the public necessity requires, and justice is done by allowing them a reasonable equivalent." Also, in Goodin v. Cincinnati & W. Canal Co., 18 Ohio St. 169, Judge Welsh says: "The true value of anything is what it is worth when applied to its legitimate use, its best and most valuable use, and not for any special or inappropriate use."

Judge Cooley, on Constitutional Limitations (page 565), says: "If the whole of a man's

estate is taken, there can be little difficulty in fixing upon the measure of compensation; for it is apparent that, in such a case, he ought to have the whole market value of his premises, and he can not reasonably demand more. The question is reduced to one of market value, to be determined upon the testimony of those who have knowledge upon the subject, or whose business or experience entitles their opinions to weight. It may be that in such a case the market value may not seem to the owner an adequate compensation; for he may have reasons peculiar to himself, springing from associations, or other causes, which may make him unwilling to part with the property on the estimates of his neighbors; but such reasons are incapable of being taken into account in legal proceedings, where the question is one of compensation in money, inasmuch as it is manifestly impossible to measure them by any standard of pecuniary value." In the case of Giesy v. Cincinnati, W. & Z. R. Co., 4 Ohio St. 331, Judge Ranney says: "Whether property is appropriated directly by the public or through the intervention of a corporation, the owner is entitled to receive its fair market value at the time it is taken,—as much as he might fairly expect to be able to sell it to others for if it was not taken,—and this amount is not to be increased from the necessity of the public or the corporation to have it on the one hand, nor diminished from any necessity of the owner to dispose of it on the other. It is to be valued precisely as it would be appraised for sale upon execution, or by an executor or guardian, and without any regard to the external causes that may have contributed to make up its present value." And Judge Dillon, in his "Municipal Corporations" (page 487), says: "He is entitled to the fair and full market or pecuniary value of the property at the time it is appropriated, but no more."

We might go through a number of the authorities upon these propositions, but the substance of all of them would be the same. In view of the provisions of the constitution of the United States, and of the state of Ohio, and the authorities. I think that just compensation, or the compensation to which the owner of private property, when taken for public use, is entitled, is its full and fair market value at the time of its being taken; and this market value is not to be ascertained by what it would bring at a forced sale, but what it would bring fairly, for any and all purposes, if the owners themselves should offer it for sale. This value is not to be diminished because the owner may be compelled to part with his title to the government, nor increased because the United States may be desirous of making the purchase; and in this particular case the value is not to be increased because of the amount of the appropriation made by congress, and the guarantee fund for the purchase of this site; neither, on the other hand, is it to be diminished because of the insufficiency of appropriation for the purchase of the site. In ascertaining its value you are to take the testimony of the witnesses, and all the facts that have been proven in the case. You are to take, in connection with that, your own knowledge as to the locality of these premises, as to their surroundings, as to the nature and character of them as ascertained by actual view upon the premises. And, in determining what weight the testimony of the witnesses shall have, you are to take into consideration, as has well been said, the testimony both for the government and for the claimants, the opportunities of knowledge the witnesses have had of the subject upon which they have spoken; whether they are conversant with the city of Cincinnati, with all the elements that go to make up the value of this particular piece of property; and taking into consideration all the facts, you may look to the reasons which the witnesses both for the government and claimants have given, and ascertain whether the conclusions which they have arrived at, and to which they have testified to the jury, are supported by the reasons which they assigned as leading them to such conclusions. You are to take all this into consideration, and then you are to test it again by the knowledge which you yourselves have been permitted by the court to derive from inspection of the locality of these buildings, from the character of these structures, from the locality of the ground, and the general purposes which you, as jurors of Cincinnati, from this testimony, and from your own knowledge, know that this property is adapted to. You are to take all these things into consideration, and when you have gone through with it all, and arrived at your conclusions, you are to give to these parties, as I said before, the full and fair market value at the time of taking—at this present time—and considering the uses to which it can be most profitably appropriated, you will give to the parties what it would fairly bring for any and all of such purposes. if the owners themselves were to-day to put it upon the market for sale. I say, "at the time of taking," but in the examination of witnesses it was admitted that the jury might take into consideration what it would have brought in case it had been offered for sale two or three months ago.

Mr. Bateman: As far as I am concerned, I am willing that the jury should give what it would have brought three months ago.

COURT: While the language of the law or its construction is that its value must be fixed as at the time of its appropriation or taking of the property, still it is not right that you should subject these parties to the consequences of what we all suppose to be a temporary depression and stringency of the money market. If this were permitted, it might have a great effect upon the value of this property. Therefore, you will not

take into consideration the state of affairs existing to-day, but of, say two months ago, relieving it from the pressure which may now be upon it. This rule applies more particularly to real estate.

Upon the motion to withdraw from the jury certain testimony, I overruled or withdrew from the jury all testimony under the fourth claim of these lessees which related to damages by delay in their business, damages by depreciation of stock, damages from the loss of good will, and damages that may result to them from the difference in the amount of rent which they may have to pay at other points and the uncertainty of getting rooms, as compared with that which they pay where they now are. I reserved, however, for further consideration one or two elements which are embraced in that fourth claim, namely, the cost of removal and damages to property in removal. These, with the value of the several articles of movable property used in carrying on the business of those parties, the value of the fixtures which they may have erected or attached to the building for the purpose of carrying on their trade, and the value of the improvements made upon the buildings of a permanent nature different from the fixtures, fronts, etc., are the claims undisposed of by the rulings then made.

In relation to the fronts which have been in controversy, made by Mr. Smith and Mr. Brigel, they have not been estimated in the value as placed upon the property by the witnesses for the claimants; they have been, I understand, by a portion of the witnesses for the government.

Mr. Bateman: Mr. De Camp estimated it at a valuation of $19,000. I do not think any of our witnesses placed any other valuation.

Judge Whitman: Mr. Bell said he estimated it just as it stood.

COURT: So far as those improvements in the fronts of the two stores are concerned, if they were affixed to the freehold in such a way as that they could be removed without injury or damage to the freehold, the tenant would have the right of removal prior to the expiration of his term. But if he left them beyond the expiration of his term, then that right would cease, and the property would be the property of the landlord. So, if he had attached them to the freehold in such a manner that they could not be removed without damage and injury to the freehold, they thereby became part and parcel of the freehold, and he would have no right to remove them either before or after the expiration of his term.

You have heard the testimony as to the nature and character of these improvements. If it be that the property can be removed without injury to the freehold, then, although technically the term of Mr. Smith has expired, still, in remaining in possession of the property by consent of the landlord, I do not think the technical termination of his term would, of itself, take from him the right to remove this property, but that he still possesses the right to remove it. From all the facts in the case, Mr. Smith, I think, is entitled to the removal of those fronts upon his placing the property in precisely the same condition in which it was before he made the improvement. But I think that it would be just to Mr. Smith to allow him the fair value of those improvements; that is, whatever they would bring in their present condition, if he sees proper to leave them there. For, while there may be a possibility of his removing them, still they are affixed to the house in such a way that they may be said to have become part and parcel of the freehold; and as Mr. Bodman did not expect to enjoy the improvements, no agreement being made when he leased the property that they should be made, I therefore think it would be fair to allow Mr. Smith what those improvements would add to the value of that property,—what they are worth to the property as attached to it now. But you must be careful in making an estimate of the value of that property that you do not overlook the fact that, in the estimation of the defendants' witnesses there has been no estimate of that character added to it. You must not, therefore, take it from Mr. Bodman's, unless you add to the property the value of the improvements. Your verdict, as far as this is concerned, would be that he was entitled to so much, specifying what it was for. On the other hand, if Mr. Smith wishes to remove it, he has the privilege, on condition of placing the property as it was before.

As to the fixtures, the shelving, etc., of Mr. Smith, the law is the same as that applicable to the fronts. The party has a right, during his term, to remove them, provided he can do so without damage to the freehold. If he does not, or if they cannot be removed without such damage, they are a part and parcel of the freehold, and become the property of the landlord. But in this case their value has not been estimated; they have been excluded. Therefore Mr. Smith may be entitled to a fair compensation for the use of those fixtures, if you find he had any term there. But if he had no term there, you may give what Mr. Smith's fixtures were fairly worth to the building; what they would add to the building, if anything.

Next, that which relates to the several articles of property used in carrying on the business,—tools, counters, and everything of that character. These are removable property, and the party is not entitled to any compensation for such property. He is entitled to take them and use them wherever he goes, and a party taking that place of business is not compelled to take any such property; in a word, everything which is not attached to the freehold and which may be removed. In regard to these two items they are not to be

taken out of the value of the building, as they were valued separate and apart from it. That leaves the costs of removal and damages to the property in the removal.

Judge Mallon: I think your honor said, in your ruling before, that you would consider also the loss of trade during the time of removal.

COURT: That is so. I intend to review what the supreme court of Massachusetts has ruled in favor of the tenant where there was a partial appropriation of the term which the parties may have had in these premises. If, in this case, the parties had a right to a term under these leases, whether for three or four or five years, or for one year, I am not certain in my own mind, that they would not be entitled to the costs of removal, damages in the removal of property, as breakage, etc., and loss of trade during the time of removal. But there is but one single case in these six where, according to the ruling of the court, the parties under their written contracts are entitled to any term whatever; it is at an end; they have no right to remain longer in the premises. Under these circumstances, I do not think it is the law, though it is a question about which I had doubt when I ruled before; and upon further examination of the authorities I am not so clear in my own mind as I should like to be. Yet the better inclination of my mind is that those parties are entitled to no compensation for the removal, for the loss of trade during the time of removal, or for damage done to their goods in removal.

This disposes of all, except the lease of Mr. Davis. Mr. Davis has a term secured to him by a legally executed lease, and, as against his landlord, he is entitled to compensation for whatever that lease may be worth, applying the same principles to this that I apply to the value of the real estate. We must look at the terms of this lease in order to ascertain what Mr. Davis is fairly entitled to. By the terms of it he was to build the shed and fit it up at his own expense; he was to have the use of it for five years. At the end of five years he was to leave it, and it was to be the property of Mr. Bodman. He is deprived by the act of the government of its use for this period of time; and Mr. Bodman, by the same act, three years and a half before the time when he should receive the full value of the shed. Now, what rule shall we adopt in order to ascertain the damages to which Mr. Davis is entitled.

It was contended by the learned counsel for the claimant that the rule should be applied which is applied to cases where a part of the estate is taken; that we must ascertain how much less valuable the remainder of it would be to the owner on account of this portion having been taken, and that you might look to see what would be the true value of this property to Mr. Davis in connection with his other stable. I recognize that rule as sound law. It is held by the

authorities that where a portion of an estate is taken you must consider not only the value of the particular portion taken, separate from the remainder, but you must take into consideration the damage to the remaining portion, and give the amount of the two combined. But I do not think the rule applies to a case of this kind. There is no connection whatever between the estate which Mr. Davis has remaining and the one which is taken. He may derive some benefit and make some profit from their use in connection, but there is not that identity and connection which warrants the application of this rule. Neither can you take into consideration what he might have made as profits from their use, because it is a speculation into which you cannot go. It is so uncertain in its character that courts and juries can not go into such an examination to ascertain values. How, then, can you estimate its value? Judge Whitman said that, inasmuch as they would get the value of the property, it would be just to Mr. Davis that he should have that value, and that he should have for the remainder of his term the difference between what this property in its present condition would fairly rent for, and the amount which he was to pay for it. Mr. Davis might not be strictly entitled to the value of this shed as appraised. The legal rule, in its strictness, would entitle him to the value of the use of it for the remainder of the term, not the value of the building itself. But inasmuch as counsel, in his liberality, has said to the jury that they might give him the present value of it, you may do so, and also give him the difference between a fair rent of the property now and what he agreed to pay for the remainder of the term.

Judge Whitman: Will your honor add to that that it is to be based upon the hypothesis that Mr. Davis still continues to pay $400 a year?

COURT: If I say that the jury must give to Mr. Davis the full value of the rent, he must still continue to pay the rent; but we simply give to him the difference.

Mr. Bateman: As between Mr. Davis and Mr. Bodman, it is a matter to be adjusted between them.

COURT: The jury understand that.

And now, gentlemen of the jury, having given you, as carefully as I could, the law of the case, I think it not inappropriate to remark that, in consideration of the importance of this case, which you full recognize, we are certainly under great obligations to you. With the cares of business pressing upon you, you have consented to waive the interests of your own business for the time being, that you might attend to the public business. It would be a matter of great congratulation to the country if gentlemen of your character and standing would feel themselves called upon to attend public matters when the public interests demanded it. You have been prompt in your

attendance and patient in listening to the testimony, and argument of counsel, and the charge of the court. We now give the case to you. You will, in returning your verdict, say how much each one of these parties is entitled to. Should you return a verdict for the lessees, you will say how much each one is entitled to, and for what items.

The jury returned the following verdict:

"We, the jury heretofore impaneled to ascertain and determine the compensation due to the owners by reason of the appropriation of in-lots 118, 119, 143, and 144, in the city of Cincinnati, by the United States, do find the amount due to the several owners and claimants of lot No. 14, as described in the petition, being a part and parcel of said in-lots, as follows:

Ferdinand Bodman, for ground...... $48,000
For improvements on same.......... 22,000
    Total ..................... $70,000

J. A. Smith, for plate-glass and other portions of store front............... $500
And for shelving ..................... 200
    Total ..................... $700

J. B. Brigel, for glass and other portions of store front......................... $300
And for shelving ..................... 200
    Total ..................... $500

"To H. H. Davis, for the unexpired time of his lease, sixteen and two-thirds dollars per month, or $655 37, and three hundred ($300) for the building, to be deducted from the amount herein awarded to Mr. Bodman.

"Messrs. Smith and Brigel have the option of removing their store fronts and shelving, in lieu of receiving the award upon condition of placing the property 'as it was before.' "

Verdicts in like form were rendered in the other cases. In some of the subsequent cases, the jury, under direction of the court, returned in their verdict findings of the costs of removal of goods, subject to the final judgment of the court as to the liability of the government for such damages. The sum of such findings being, however, very small, the district attorney, upon final judgment, and to avoid delay, waived objection and allowed judgment to go for them.

In the valuations of lots 21 and 22 the heirs of D. K. Cady, who own a perpetual leasehold estate therein, claimed that their estate was wholly independent of that of the lessor, and should be valued without reference to the total value of the property or the value of the remaining interest. The court charged the jury in respect thereof as follows:

SWING, District Judge. In the taking of private property for public use, under the right of eminent domain, the government pays to the owner the full, fair market value thereof. In this case it is the land and the improvements thereon which are a part of the land itself. If the title in fee simple and

possession and right of possession is vested in the same person, there is no difficulty in determining the questions as to the amount and person to whom the damages shall be paid. The amount will be the full and fair market value, and the award will be to the owner. If, however, the owner in fee has leased the property, then the lessee or tenant is entitled to the value of his term in the property. This value is to be determined by ascertaining how much more the term is fairly worth than the amount of rent which he is bound to pay to the owner of the fee, and this amount he is entitled to out of the market value of the land, and the owner is entitled to the remainder of such value. The proceedings in condemnation have put an end to the relations of landlord and tenant. The tenant having received the full value of his lease, over and above the amount of rent he was bound to pay, cannot claim the enjoyment of the premises, and the landlord having received the value of the property, subject only to that, cannot claim from the tenant the payment of the rent.

Numerous motions for new trials having been overruled, John Gerke, treasurer of Hamilton county, Ohio, appeared, and made written application for the payment of the taxes owing upon the several pieces of property out of the compensation assessed by the jury, and the district attorney made motion on behalf of the United States for the same order. These taxes amounted to the sum of $9705 14.

District Attorney Bateman claimed that the state had two remedies for the collection of its taxes upon real property, viz., one personal by distraint or otherwise against the property owner, and the other by special proceeding against the land. Under the act of cession the effect of this proceeding was to transfer the jurisdiction over the property condemned to the United States, and to extinguish all liens as it was to destroy all remedies against it for taxes. The state was still entitled to claim its interest in the property out of the fund when paid into court, which by virtue of the law it had provided for its condemnation was intended to take the place of the property and of all the interest in it.

Judge Whitman and others, in behalf of the property owners, insisted that, inasmuch as the state had not been made party, nor its interest submitted to the jury for valuation or adjustment, as among the other interests in the property, the court could not apportion and deduct the taxes from the valuations the jury had awarded.

SWING, District Judge. The statutes of Ohio provide that taxes for each year shall be a lien from the day preceding the second Monday in April thereof, and until they shall be paid. Swan & S. p. 762. They further provide that whenever land shall be sold at

judicial sale, the taxes thereon shall be paid upon order of the court out of the proceeds of sale. 2 Swan & C. p. 1465. But it is very doubtful whether this is a judicial sale; and upon examination of the statutes of Ohio, so providing for payment of taxes above referred to, I am unable to reach the conclusion it is such. Neither the law of Ohio ceding jurisdiction, nor the law prescribing the mode of proceeding for condemnation by the United States, provides for the payment of the taxes; and inasmuch as the state of Ohio has not been, and in fact could not have been, made a party so as to present its claims to the jury, and inasmuch as the parties are personally liable to the state for taxes, we must leave it where we find it as to the claim of the state for its taxes. Whether the state would retain its lien for taxes upon the property after condemnation may be doubtful. We are not called upon to decide that question. The law of April, 1872, ceding jurisdiction, provides that when title shall have been acquired by the United States by purchase or appropriation under the right of eminent domain, jurisdiction shall vest in it, and the property 'shall be and continue exonerated from all taxes, assessments, and other charges, which may be imposed under the authority of this state." The application of the treasurer and motion of the government must be overruled.

Having disposed of the foregoing motions, judgments were entered as to the several pieces of property in the following form: "This cause coming on to be further heard upon the petition of the United States, the findings of the court upon the preliminary inquiries and upon the claim of the treasurer of Hamilton county for taxes, and the verdict of the jury duly impanelled and sworn to ascertain the compensation due to the several owners and claimants of the property described in the petition, and it appearing to the court that said property has been legally appropriated by the United States under the right of eminent domain, that Ferdinand Bodman, John B. Brigel, H. H. Davis, John Lentz, John A. Smith, J. A. Ringerman, and Fox Brothers appeared and claimed compensation by reason of the appropriation of Lot No. 14, as described in the petition, and that the jury has found the amount due by reason of such appropriation to be, to Ferdinand Bodman, $69.044 63; to Jno. A. Smith, $700; John B. Brigel, $500; and to H. H. Davis, $955.37: It is therefore ordered, adjudged, and decreed by the court that upon full payment by the United States of said sums of $69.044 63 to Ferdinand Bodman, $700 to Jno. A. Smith, $500 to John B. Brigel, and $955 37 to H. H. Davis, or into court for their use, the title to said lot (No. 14, as described in the petition) shall vest in the United States, and a writ of possession is awarded to put the United States in possession thereof. And it is further ordered that the United States pay the costs herein, taxed at $———."

R. H. Stephenson, disbursing officer, having paid the amounts adjudged to each claimant upon the judgments entered, mainly to the claimants, but a small portion into the registry for the use of such as failed to appear, and the costs taxed, an entry was made finding such judgments in detail, and "that the United States has become entitled to the possession of said premises, under and by virtue of its appropriation aforesaid," and it was thereupon "ordered and adjudged that a writ of possession issue upon the precipe of the district attorney to the marshal, commanding him to remove from said premises the said occupants thereof, and to place the United States, by its agents and officers, in possession of the same."

Some of the counsel for claimants moved the court to retax the costs so as to allow a docket-fee to the attorney of each claimant, upon which Judge SWING held that it was not a case embraced within the fee-bill as to attorneys' fees, and the motion was thereupon withdrawn.

Bill of exception was allowed to Mary S. Kohl and others, claimants of a leasehold interest in one of the pieces of property condemned, as to the order of the court overruling the motion to dismiss for want of jurisdiction, and as to the order overruling the motion for a separate trial and verdict as to their interest, and the cause taken to the supreme court.

[The judgment of this court was affirmed in the supreme court. 91 U. S. 367.]