PABST BREWING CO. v. THORLEY.

(Circuit Court, S. D. New York. January 2, 1904.)

1. LEASE—COVENANTS—QUIET ENJOYMENT—BREACH—PLEADING.
Where, in an action for breach of a covenant of quiet enjoyment in a lease, the complaint averred that the city of New York took possession of the premises under a paramount title, but alleged no facts in support of such averment, except that the property was taken in condemnation proceedings by the rapid transit commissioners, such allegation was a mere legal conclusion, and would therefore be disregarded.

2. SAME—EMINENT DOMAIN.
A covenant of quiet enjoyment in a lease is not broken by the entry of the city in the exercise of its power of eminent domain.

3. SAME—CONSTRUCTION.
Where a covenant in a lease obligated the lessor to secure the lessee in the quiet enjoyment of the premises against the lessor's own acts, or the acts of his heirs, executors, administrators, or assigns, "or any other persons," the words "any other persons" should be construed to refer to other persons deriving their right through the lessor or by a paramount title.

Joseph Fettretch, for demurrer.
A. S. Gilbert and Wm. A. Keener, opposed.

WALLACE, Circuit Judge. This is a demurrer to the complaint in an action for the breach of a covenant of quiet enjoyment in a lease executed by the defendant to the plaintiff of lands and premises, including a building which at the date of the execution of the lease was in process of construction according to plans approved by the parties. The complaint avers that the building was completed in conformity with the plans, part thereof on the defendant's land, and "part thereof was lawfully constructed" in three public highways adjoining said premises; that the plaintiff entered into possession of the building and the part of the premises in the highway; that the city of New York was the owner in fee of the land in which that part was constructed; that after the plaintiff had taken possession the rapid transit commissioners, pursuant to the powers conferred on them by the statute, adopted plans which included the appropriation of that part of the leased premises; and that thereafter the city proceeded to construct a railway, and the "city or the rapid transit commissioners" entered upon and occupied the same. The covenant is for the quiet enjoyment of the demised premises by the lessee during the term of 19 years and

9 months, "without any manner of let, suit, trouble, or hindrance of or from the lessor, his heirs, executors, administrators, or assigns, or any other person.",  ·

The fair purport of these and other averments in the complaint (which need not be detailed) is that the rapid transit commissioners, in behalf of the city of New York and assuming to act under their statutory authority, took possession of certain lands belonging to the city, which, by a lease or license in force at the time when the premises were demised to plaintiff, the city had authorized the defendant to occupy with his building.  There is no averment tending to show that the commissioners or the city were proceeding unlawfully in entering upon and taking possession of the premises.  There is an averment that the city took possession under title paramount, but no facts in support of this legal conclusion are stated except those relating to the proceedings of the rapid transit commissioners, and unless these proceedings refer to the nature of the paramount title it was unnecessary to set them out.

A covenant for quiet enjoyment in a deed or lease is not broken by the entry of a municipality in the exercise of the power of eminent domain delegated to it by the state.  It is not an entry under paramount title, within the meaning of such a covenant.  "Like any other covenant, it must be restrained to what was supposed to be the matter in view.  No grantor who warrants the possession deems that he covenants against the entry of the state to make a railroad or canal, nor would it be a sound interpretation of the contract that would make him liable for it.  An explicit covenant against all the world would bind him, but the law is not so unreasonable as to imply it."  Osborn v. Nicholson, 13 Wall. 657, 20 L. Ed. 689.  The exercise of that right by the state is an incident of the tenure of all real property, and both of the parties to the deed or lease must be presumed to have taken it into consideration at the time.  Brimmer v. City of Boston, 102 Mass. 19, 22; Folts v. Huntley, 7 Wend. 210.

By the provisions of the statute known as the "Rapid Transit Act" (Laws 1891, p. 3, c. 4), the commissioners, in behalf of the city, were authorized to acquire any real estate, rights, or interests therein, and any rights, privileges, franchises, and easements which in their opinion it should be necessary to acquire for the purpose of constructing the road.  By other provisions of the statute the proceedings to acquire title were prescribed, including the appointment of commissioners to ascertain and award the compensation to be made to property owners.  The statute, section 47 (Laws 1894, p. 1889, c. 752), provides that upon filing the oath by the commissioners of award "the said city shall be and become seized and possessed in fee or absolute ownership of all the parcels of property which are on the maps which have been filed by the rapid transit commissioners;" and of "all rights, terms, franchises, easements or privileges appurtenant to any lots or parcels of property indicated on said maps," and the city may immediately or at any time thereafter take possession, enter upon, and use and occupy the same in perpetuity.  It provides for the ascertainment of compensation to the owners according to the usual procedure, for a report to the Supreme Court, and for the payment of the awards after confirmation of the report.

If the premises in controversy were lawfully condemned and acquired by the rapid transit commissioners, the plaintiff either has obtained or can obtain the compensation to which he is entitled for the interference with his enjoyment of the premises. If they were not lawfully condemned, he has a remedy against the city of New York.

If the covenant for quiet enjoyment were the ordinary covenant, no doubt would be entertained that it does not extend to the protection of the plaintiff against the exercise by the city of its power of eminent domain. Such covenants in a deed are usually framed so as to extend only to an eviction under title paramount to the grantor, and in leases only to an unlawful interference with the demised premises by the lessor. Mayor of New York v. Mabie, 13 N. Y. 151, 64 Am. Dec. 538. As was said in Frost v. Ernest, 4 Whart. (Pa.) 86:

"The doctrine of the books, by which a general covenant in a lease for quiet enjoyment extends only to entries and interruptions by those who have lawful title, has never been regarded as comprehensive enough to reach a case of an easement acquired by the public after the execution of the lease, though acquired under their paramount and controlling prerogative."

In Ellis v. Welch, 6 Mass. 246, 4 Am. Dec. 122, the covenant in the lease was that the lessee "shall hold and occupy the same [premises] for the term of five years from," etc., and the court held that the covenant was not broken by an entry by the public authorities of Boston in the exercise of the power to locate and establish a town way. In its opinion the court said:

"All deeds are to be construed agreeably to the intent of the parties, and in a lease or conveyance containing a general covenant for quiet enjoyment it must be presumed that the parties had in view evictions, entries, or disturbances, to be made by virtue only of existing rights, and not of rights afterwards to be acquired; for these it cannot be presumed, from the general words of the covenant, were contemplated."

Nevertheless it is competent for the parties to a lease, if they so choose, to insert into it a covenant for quiet enjoyment in such terms as would extend to an entry or eviction pursuant to the power of eminent domain. The present covenant, besides obligating the lessor against his own acts, obligates him also for the acts of his heirs, executors, administrators, or assigns, "or any other person." These last words certainly are not intended to obligate him for the acts of all other persons, as, for instance, trespassers. They are to be read by the rule ejusdem generis. They naturally refer to other persons deriving their right through the lessor, or possibly by a paramount title, and for whose acts he ought to be responsible. If it had been intended to protect the lessee against the results of a pending or impending condemnation proceeding, it is reasonable to suppose that the parties would have expressed that purpose in no uncertain terms. The more reasonable view is that they did not contemplate such a proceeding, and the covenant was not intended to extend to it.

The argument for the plaintiff has assumed that at the time when the lease was made the defendant had an uncertain and determinable right to use the land owned by the city upon which a part of the building was constructed, and that the city could at any time revoke the license, and repossess itself of the property. If the complaint had

set forth facts showing that the part of the premises owned by the city was at the time of the making of the lease occupied by the defendant under some determinable title from the city which the city subsequently lawfully terminated, and that the city entered and evicted the plaintiff under its paramount right as owner, a different case would be presented. But such facts are not alleged, and the case presented depends upon the question whether the covenant protects the plaintiff against the exercise of the power of eminent domain. Reaching the conclusion that it does not, the demurrer is sustained.

Ordered accordingly.