George Tilzer, J.
In this proceeding the City of New York, acting for and on behalf of the New York City Housing Authority, duly acquired title on October 16, 1959 to certain real property within the area bounded generally by Bast 144th Street, Willis Avenue, Bast 143rd Street and Third Avenue (Parcel A), Bast 143rd Street, Willis Avenue, Bast 141st Street and Alexander Avenue (Parcel B), and Bast 141st Street, Willis Avenue, Bast 140th Street and Alexander Avenue (Parcel C), in the Borough of The Bronx, City of New York, "duly selected as a site for a Federally aided public housing project known as Mott Haven Houses (Project No. N. Y. 5-44) and duly approved according to law. A first, separate and partial final decree has heretofore been entered herein in connection with a number of adjusted fixture claims. The trial of the balance of the fixture claims in this proceeding has been adjourned sine die. This decision involves all of the fee claims in the proceeding. The *809 court, having made the prescribed statutory view, and after due consideration of all of the evidence and the exhibits and appraisals of the claimants and the City of New York, makes the following fee awards: [list of awards not published since not of general interest].
Damage Parcel 28 is improved with a two-story brick commercial building. The issue to be determined with respect to this parcel is the correctness of the appraisal theories used by the respective experts for the fee claimant and the City of New York.
At title vesting the property was leased in its entirety for a term of 21 years, expiring in 1970, at an annual net rental of $4,000. The lessee was also granted two renewal options of 21 years each at a maximum net rental of $4,500 for the first renewal period and $5,000 for the second renewal period. The lessee had sublet the entire property to various store tenants. The claimant’s expert has submitted an appraisal of $130,000 that is based on a capitalization of the estimated net income derived from the claimed actual gross rentals of $17,760 paid by these subtenants. However, it should be noted that with respect to the actual rents paid, he conceded on cross-examination that one of the store tenant’s leases had been modified prior to vesting by a reduction of annual rental from $3,600 to $1,800. Adopting his own theory of appraisal, this would accordingly reduce his appraised valuation unless the sum of $17,760 be adopted as the fair rental value of the property. The city’s expert based his valuation of $75,000 on a capitalization of the net rental of $4,000 received by the fee owner from the prime tenant over the possible remaining term of 53 years under the prime lease. On cross-examination, on the assumption that $17,760 was the fair rental value of the entire property, he testified his appraisal of the entire property on a "free and clear basis would be $98,000.
Thus it appears the claimant’s expert has appraised the property as an entity, free and clear of the incumbrance of the lease and the city’s expert, on instruction from the Corporation Counsel, has appraised the property on the basis of the interest of the owner-lessor as incumbered by the lease and has included no allowance for the lessee’s interest in the property.
The lessee in the instant case has filed no claim for the value of his leasehold interest. In this regard the lease in evidence contains a unique and unusual provision with respect to condemnation. After providing for a release of the lessee’s claim to the lessor it also provides a detailed method for determining the share the lessee would be entitled to out of the entire award. *810 The exact verbiage is as follows: “ If the whole of the demised premises, or if more than twenty-five (25%) per cent thereof, are taken for any public purposes, then this lease shall cease and terminate on the date when possession of the whole or part so taken shall be required or when title is vested in the taking authority, whichever event first occurs, the rent shall be paid up to that date, but the Lessee shall neither be entitled to nor shall claim any damage by reason of such condemnation and shall release to the Lessor all of its right in and to any award that may be made in any such proceeding and agrees to execute and deliver any and all instruments that may be required to effectuate the provisions hereof; that the proceeds of any such award shall be treated as an entirety, and, upon receipt thereof, the Lessor shall distribute the same in the following manner: ’ ’
It is manifest from the other provisions of the lease that what the parties had in mind was the reimbursement to the lessee for alterations to the premises made by the lessee. These alterations were of a substantial nature and resulted in the obtaining of the difference between the rental paid to the lessor and the rentals paid to the lessee by the subtenants, viz., $4,000 and approximately $17,000.
From all of the foregoing it cannot be questioned but that the lessee had a valuable interest in the property. “ Where leased property is taken or injured, the compensation should be apportioned between the lessor and lessee according to their respective interests, the lessor being entitled to compensation for injuries to his reversion, and the lessee for injuries to his leasehold interests ” (29 C. J. S., Eminent Domain, § 198, pp. 1103-1104). Damages for the taking of his leasehold interest are based on ‘ ‘ the value of the unexpired term of his lease, to wit, the difference • between the fair annual rental of the demised premises for the unexpired term and the amount of rent actually reserved in the lease for that period” (Levey, Condemnation in New York, p. 154). If there were no “ condemnation clause ” in this lease, the fee owner would present his claim for the value of his fee interest subject to the leasehold interest and the lessee would present his own claim for the value of his leasehold interest. The appraisers would then be required to “ appraise the entire value of the premises and then apportion such value among the fee owners and tenants, or they may in the first /instance appraise the value of each separate interest and thus ascertain the entire value ” (Matter of Trustees of New York & Brooklyn Bridge, 137 N. Y. 95, 97; see, also, Matter of City of New York [Delancey St.], 120 App. Div. 701). The ultimate question is whether this fundamental rule of damages is changed *811 merely because the owner and lessee have agreed either to a division of the award, as in this case, or to an assignment or release of the entire award to the lessor as in the usual case in which the lease contains a “ condemnation clause The authorities clearly make no such distinction. In the language of the Court of Appeals “ Why should the rule of damages be any different in a case where the lessee and its lessors agree to divide an award which must have been to one or the other but for their agreement? ” (Matter of City of New York, 193 N. Y. 117, 126.) Unquestionably the rule is that “In fixing awards in condemnation proceedings, the value of what has been taken must be determined and then that value must be divided among those whose interests are extinguished by the taking. Those interests may be defined by contract of the parties interested and in the same way the parties may determine by agreement how compensation shall be divided upon the extinguishment of those interests by the sovereign.” (Matter of City of New York [Allen St.], 256 N. Y. 236, 242-243.)
In contradiction of these guiding principles, the city would have the court disregard the value of the lessee’s interest and make a total award only for the lessor’s interest despite the fact that the city is taking both interests. The city has submitted and the court has found no authority that would warrant the taking of an interest without the necessity of paying just compensation for what it has taken. The city’s contention that the owner could not obtain any more for the property in the market place if it were incumbered by this lease totally ignores the fact that a purchaser of the fee interest would acquire the property subject to the incumbrance of the lease. The city takes the property free and clear of all incumbrances and thus acquires the interest of both the fee owner and the lessee (Administrative Code of City of New York, § B15-37.0; Matter of City of New York [Allen St.], supra, p. 242). The very quote from the Allen Street case relied on by the city that61 The City takes the real property condemned, as it then exists ’ ’ (p. 241) supports the claimant’s contention. An inspection of the property taken (statutory view) showed various tenants in possession as a result of the extensive alterations made by the lessee. This is the condition which brought about the increase of approximately $13,000 in rental. The contention of the city is that the court should not compensate for this situation. This is contrary to the principle that requires the awarding of just compensation for what is taken. As this property, so improved, existed at the time of vesting of title, it was by operation of both the act of the sovereign and the agreement of the parties, *812 free and clear of the incumbrance of the lease. This is what the city has taken and it is this for which it must pay.
It is the holding of this court that the city’s written appraisal is based on an erroneous theory of damages. Accordingly, the court, in making this award, has capitalized the estimated net rentals derived from its estimate of the fair rental value of the entire property, and makes a total award for Damage Parcel 28 in the sum of $105,000.