OPINION OF THE COURT
Leonard Silverman, J.
After a lengthy trial held before this court, we awarded claimants $1,380,000 for damages resulting from the appropriation by the State of claimants’ property (Schwartz v State of New York, 95 Misc 2d 525). Pursuant to subdivision 1 of section 19 of the Court of Claims Act and the Appendix to the Rules of the Court of Claims, we also provided for interest to be paid from the date of vesting until entry of judgment. Unbeknownst to this court, it not having been introduced at trial, the parties to this action had entered into an "advance payment agreement” which provided for the suspension of interest during certain periods of time pending the clearing of title.
On August 10, 1978, claimants served a proposed judgment with notice of settlement upon the Attorney-General. This proposed judgment provided for the full amount of interest and, no counter proposed judgment having been submitted by the defendant for any lesser or differing amount, judgment was entered on October 4, 1978 in the office of the Clerk of the Court of Claims.
*733 REOPENING THE TRIAL
The State now seeks an order vacating the judgment and reopening the trial for the limited purpose of permitting the introduction into evidence of the advance payment agreement between the parties for the purpose of proving an interest suspension. The State also seeks, by this motion, a further interest suspension on the principal balance of the award itself and for an order directing the Comptroller to deposit the award in a bank pursuant to subdivision 2 of section 22 of the Court of Claims Act.
CPLR 4404 (subd [b]) provides for posttrial motions to set aside a decision of the court or a judgment entered thereon. CPLR 4405 limits the time when such an application can be made to "within fifteen days after decision, verdict” or in the case of jury trial (pursuant to CPLR 4404, subd [a]), discharge of the jury.
CPLR 5015 also provides for relief from a judgment or order, even beyond the 15-day limitation period enunciated in CPLR article 44, upon "(2) newly-discovered evidence which, if introduced at the trial, would probably have produced a different result and which could not have been discovered in time to move for a new trial under section 4404; or (3) fraud, misrepresentation, or other misconduct”.
Additionally, defendant asserts that the judgment was not legally entered because subdivision 4 of section 19 of the Court of Claims Act provides that "[b]efore the entry of judgment, the attorney-general shall notify the clerk of the court in writing of the period of time, if any, during which interest on the award shall be suspended pursuant to this subdivision” and no such notification was made at bar. To the extent that rule 28 of the Rules of the Court of Claims (22 NYCRR 1200.30), as amended, provides for entry of judgment within 20 days after filing of a decision upon five days’ notice to the adverse party, counsel for the defense claims this rule to be in direct conflict with the afore-cited statute and thus urges us to declare it invalid.
We disagree and iterate the words of the Appellate Division enunciated in a decision rendered during the pendency of this motion. "We also reject the State’s contention that there is a conflict between subdivision 4 of section 19 of the Court of Claims Act and 22 NYCRR 1200.30. The latter rule assures the speedy entry of judgment by requiring the Clerk to file the *734 judgment within 20 days. Subdivision 4 of section 19 pertains only to interest and penalizes a claimant who deliberately or negligently fails to clear title to the property appropriated”. (Schoepp v State of New York, 69 AD2d 917, 918.)
It is clear to the court that none of the statutory reasons for vacating the judgment apply to the facts at bar and, accordingly, this court’s consideration must be directed to the court’s inherent power over our own judgment. This power is not limited by statutory authority or, as in Marketos v State of New York (Claim No. 54064, Motion No. M-17524, De Iorio, J., Aug. 7, 1975), cited to us by defense counsel, to "judgment resulting from mistake or inadvertence”, but indeed is limited only by considerations in the "furtherance of justice.” (Hatch v Central Nat. Bank, 78 NY 487, 490.)
We are thus called upon to decide whether "justice” requires a vacatur of the judgment at this time. Part and parcel of such consideration is a determination as to whether the interests of justice would ultimately require the entry of a judgment in the lesser amount claimed by the State to be due. This issue in and of itself requires both procedural and substantive analysis, with the latter involving application of principles of equity and fairness as well as of the more rigid statutory enactments.
The advance payment agreement executed by both parties provides, inter alia, that the claimants "execute and deliver or cause the execution and delivery to the Attorney General of all formal papers which the Attorney General deems necessary to authorize payment and to secure to the State a full release of all claims”. By a supplement to that agreement it is provided that:
"C. Interest shall be suspended from the expiration of thirty (30) days after either:
"(1) the date of the approval of the Agreement * * *, or "(2) the date of delivery of closing papers to claimant, "whichever date is later, and shall remain suspended until the Attorney General is presented with all proper proofs, instruments and vouchers in satisfactory form which he requires in order to authorize payment of the claim.”
An advance payment agreement is clearly admissible at a trial, at least to the limited extent of showing a required interest suspension. (Yonkers Realty Assoc. v State of New York, 52 AD2d 1014, 1015.) Not having introduced the agree *735 ment at trial or prior to entry of judgment, defendant seeks the reopening of the trial at this stage in order to afford it one more opportunity, prior to appeal, to raise the issue.
It is the opinion of this court that this portion of defendant’s motion must in all respects be denied. Furthermore, we hold that even if the reopening of the trial was not barred by laches, we would, upon vacatur of the judgment as entered, be forced by both the applicable principles of law and in the interest of justice, to deny defendant’s motion insofar as it seeks a suspension of interest on the amount of the proposed advance payment.
SUSPENSION OF PRE JUDGMENT INTEREST
It is the opinion of this court that under the facts of this case it would be unconscionable and against the public policy to allow for the suspension of interest on the amount of the proffered but unpaid advance payment agreement.
Chapter 1155 of the Laws of 1971 provides for the offer to a claimant of 100% of the State’s appraised value of an appropriated property rather than the 75% of value previously provided for. The reason for this bill, as set forth in the legislative memorandum accompanying it (NY Legis Ann, 1971, p 319), is the recognition that such is the "more fair and equitable approach to the problem of compensating persons whose property is required for public projects,” because "today’s trends in the area of eminent domain favor the affected owners.”
To allow for the suspension of interest is to ignore the trend toward the "more fair and equitable approach”.
Claimants in the case at bar promptly signed the agreement forwarded to them — not to sign it would have subjected them to a suspension of interest upon refusal or after a 90-day period. Thereafter, they attempted to obtain the requested releases from Citibank, the FDIC, Marine Midland Bank, Chemical Bank and St. Paul Fire and Marine Insurance, all of whom, after their own fashion, refused to co-operate. As our eloquent colleague, Judge Lengyel, so aptly put it in a similar case, claimants were thus "the modern counterpart of the seafarer who attempted to steer a course between Scylla and Charybdis. If he refuses to sign the contract, he is faced with suspension of interest after the mandated 90 day period. If he signs the contract and cannot obtain the required * * * re *736 leases, he is faced with a suspension of interest after the 30 day period.” (Bobwin Real Estate Corp. v State of New York, Claim No. 47781, Oct. 15, 1969.)
The Bobwin case (supra) involved a claim by a tenant which, interestingly enough, was controlled by the same principals involved in the fee claim. Nevertheless, Judge Lengyel, when faced with an agreement such as at bar, held: "We do not find the terms of said partial payment agreement to be 'fair, honest and reasonable.’ Furthermore, we find that said partial payment agreement, in the instance of a fee owner with tenants who either have a bona fide claim or, in what amounts to legal extortion, contend they have a claim, is a violation of the transcendant requirements that claimants shall be paid just compensation. See, McKinney’s Const. Art. 1 § 7. We find the partial payment agreement entered into between the State and Bobwin Real Estate Corp., Inc. a nullity and legally unenforceable. We find said partial payment agreement in violation of the Constitution of the State of New York. We reiterate our direction that the State shall pay the interest found due upon this award by this Court.”
The facts at bar are considerably more compelling than in Bobwin (supra). We hold, therefore, that the contract at bar, to the extent that it is interpreted to provide for an interest suspension, is an adhesion contract and unenforceable.
This interpretation of the State is not, however, beyond contest.
Movant, in justifying its making of the motion to reopen the trial, refers the court to Matter of Trojan Serv. Stas. v Levitt (44 AD2d 642, 643), which, quoting Matter of Wright v State of New York (37 AD2d 874, 876), held on similar facts that " '[t]he State permitted the entry of judgment in an amount which included the unpaid advance and * * * [i]t should not now be heard to complain’ ”. Counsel for the State asseverates that "[i]t is precisely for this reason that the State now moves to vacate the judgment and reopen the trial so that the issue of interest on the unpaid advance payment may be raised in the Court of Claims.”
Although defendant-movant has failed to distinguish the case at bar from Trojan (supra) with respect to the vacatur of judgment, we are concerned with a more interesting similarity between the cases.
As at bar, the Trojan (supra) case involved an executed *737 agreement for advance payment whereafter claimant was not able to obtain the required releases. The Third Department, in large part citing its prior decision in Wright v State of New York (supra), stated: " 'Further, the agreement provided for no interest to be allowed in the award "on the amount of such partial payment.” We can only conclude that interest was to be suspended on an actual advance partial payment; both the language of the agreement and the equities of the situation so dictate.’ We reiterate that the agreegment contemplates an actual advance payment before interest may be suspended. Were this not so, the provisions of the agreement, which permit the State to maintain a counterclaim for an excess payment should the Court of Claims valuation of the property be less than the amount of the partial payment, would be quite unnecessary. Indeed, the agreement specifically provides that 'if the Court of Claims finds the value of the property * * * is equal to or exceeds the partial payment made hereunder, the amount of such partial payment shall be deducted from the amount so found by the Court and the award of said Court shall be in the amount of the excess, if any, over and above said partial payment’ (emphasis supplied), clearly contemplating an actual payment.” (Matter of Trojan Serv. Stas. v Levitt, 44 AD2d 642, 643, supra.)
The court has compared the advance payment agreement in Trojan (supra) with the one at bar. We find them in all relevant aspects to be identical.[1] Thus, no advance payment having been made, the agreement would not necessitate a suspension of interest.
For all the reasons hereinabove set forth, defendant’s motion for a suspension of interest on the amount of the advance payment proffered but not paid, is and must be denied. Although the court was not apprised of the advance payment agreement entered into by the parties when we rendered our decision, the judgment thereafter entered should, in all respects, be allowed to stand.
INTEREST ON THE AWARD
The State also seeks a suspension of interest on the *738 award from October 14, 1978 until such time as claimants obtain clear title as required by the Attorney-General.[2]
Although the same equitable arguments would seem to apply to postjudgment interest suspension as to prejudgment interest, the court is mindful of various other considerations.
In Grossinger Realty Corp. v State of New York (15 NY2d 541, 543), the Court of Appeals, in a 1964 decision, affirmed an Appellate Division holding (20 AD2d 602) that "the Legislature did not intend that the State should be burdened with the payment of interest on the award during the process” of claimant’s negotiating with the mortgagees regarding the interest rate to be paid.
Chapter 1161 of the Laws of 1971, effective July 6, 1971, provides that,
"[i]n order to assure consistent treatment for property owners whose property is acquired by exercise of the power of eminent domain by the state or the political subdivisions thereof, or any other corporation authorized by statute to acquire property by eminent domain proceedings * * *, it is enacted as follows: * * *
"2. In the event the property owner refuses the offer of the condemnor, or cannot present to the condemnor clear and unencumbered title to the property to be acquired, or if the title of the property is disputed, the amount of the condemnor’s offer shall be deposited with the clerk of the court which shall have jurisdiction over the proceeding, or with the appropriate financial officer of the condemnor if no claim has been filed with such court. Thereafter the property owner or third party claiming an interest in said deposit may obtain the same or portion thereof pursuant to an order of a court having jurisdiction over the proceeding.
"3. The making of the payment or the deposit of the offer by the condemnor, shall extinguish the liability of the condemnor for interest on said sum as of date of payment or deposit.”
It would seem to be claimants’ position that chapter 1161 effectively obviates the public policy considerations of Grossinger (supra) and indeed feeds more fuel to the fire in connection with the question of preaward interest.
We find this argument invalid. The Appellate Division, *739 Third Department, in Matter of Silverman v Comptroller of State of N. Y. (40 AD2d 225, 226-227) stated unequivoally that "[w]e do not think that that statute is applicable to highway appropriations” and that "Chapter 1161 dealing with condemnation generally is not applicable to highway takings.”
Although we find claimants’ reliance on chapter 1161 to be misplaced in view of the cited holdings of the Appellate Division (see, also, Oriskany Dev. Corp. v State of New York, 63 AD2d 1082, 1084, for the same holding), it is nevertheless the opinion of this court that there be no suspension of interest on the award.
It is our opinion that the facts in the case at bar are clearly distinguishable from those in Grossinger (supra). In that case claimant was faced with the problem of negotiating a proposed reduction of the interest rate by a mortgagee from 6% to 51A%. At bar, claimants were not faced with a matter of negotiation; they were confronted with a group of mortgagees of imposing stature, all of which either ingored or refused to sign the releases requested on any terms whatsoever.
Furthermore, subdivision 4 of section 19 of the Court of Claims Act, upon which movant relies, and which provides for the suspension of interest on awards "from the expiration of thirty days after notification in writing by the attorney-general to the claimant or his attorney that the attorney-general is ready and willing to approve title to the property covered by the award upon the presentation to him of proper proofs, instruments and vouchers, to the date of such presentation”, does not apply to facts such as at bar.
"The purpose of the statute is to penalize a claimant who deliberately or negligently fails to clear title to the property appropriated and to procure the proofs and documents reasonably requested by the Attorney-General, while interest continues to run on the award.” This court holds "that the claimants in this case were not guilty of conduct warranting the imposition of the penalty of suspension of interest.” (D’Agostino v State of New York, 9 AD2d 724, 725; cf. Schoepp v State of New York, 69 AD2d 917, supra.)
Our holding on this point is further buttressed by the language of subdivision 7 of section 20 of the Court of Claims Act, as recently amended, and by chapter 967 of the Laws of 1971. This latter provides:
"Section 1. In order to comply with the requirement of paying interest as part of the just compensation due a prop *740 erty owner whose property has been acquired by the state, or a political subdivision thereof, or any other corporation authorized by statute to acquire property by eminent domain proceedings, it is enacted as follows:
"1. Notwithstanding the provisions of any general or special statute of the state of New York or of any local law or ordinance of any municipality within the state, on all claims hereinafter described and accruing on or after the effective date of this act, lawful interest on the amount awarded to a property owner on a claim for damages for property acquired by the exercise of the power of eminent domain, or balance thereof in the event a partial payment with interest thereon was made to the property owner, shall commence to accrue from the date of possession and occupation, or from the date of vesting of title whichever is sooner, to the date of payment.(Emphasis supplied.)
Although the argument can be made that chapter 967 of the Laws of 1971, like chapter 1161 of the Laws of 1971 which was made effective just four days later, is inapplicable to highway appropriations, there seems to be no case law to the effect[3] and we see no reason to so limit its application.[4]
That part of defendant’s motion which seeks an interest suspension from October 14, 1978, is denied.
DEPOSIT OF AWARD
Finally, the defendant seeks an order directing the Comptroller to deposit the amount awarded in a bank account pursuant to subdivision 2 of section 22 of the Court of Claims Act.
The defendant is eminently entitled to this relief. Nevertheless, because the interest rate typically paid on such deposits is not more than 514%, claimants request “one more opportunity to secure the permission of the various mortgagees and assignees to an escrow agreement which would permit such funds to bear a higher rate of interest.”
While this request is unusual, we recognize that the differ *741 ential in interest could be most significant in a case such as at bar. However, to grant the request would obligate the State to continue to pay interest (although it has use of the money) at the higher rate of 6%[5] and the very making of the instant application indicates that the State is unwilling to do so.
The various papers and affidavits submitted in opposition to the first two branches of defendant’s motion set forth at length the numerous attempts made by claimants’ counsel to obtain the co-operation of the mortgagees. All these attempts proved futile even in face of a threat of full interest suspension. In the words of claimants’ counsel, "[claimants could have more easily walked upon the water than secured general releases from such formidable institutions when they were disinclined to furnish them.” We must only conclude that the threat of receiving interest at the lowly rate of 5(4% would move the mortgagees but little more.
Accordingly, we grant this part of defendant’s motion, and it is hereby
Ordered, that the Comptroller deposit the amount awarded, $1,380,000, plus interest as herein set forth, in an interest-bearing account pursuant to subdivision 2 of section 22 of the Court of Claims Act.

. The rider supplement to the agreement in Trojan (44 AD2d 642, supra) is identified as "Row 21a INT (As)” whereas the rider at bar is denominated "Row 21d INT P/73)”. The only noticeable difference would seem to be that the later agreement refers to a full advance payment rather than the 75% payment originally provided for by the statute.

. The October 14 date represents 30 days plus 3 days for mailing from September 11, 1978, the date on which the office of the Attorney-General mailed to claimant’s counsel, for execution, the closing papers required for certification of title.

. Indeed, the Supreme Court, Albany County, in Lerner v Levitt (Hughes, J., Index No. 1346/76, July 9, 1976), clearly applied chapter 967 to appropriations under the Highway Law, but quite properly limited this chapter to actual awards as opposed to settlements.

. Note also that this chapter directs the payment of interest on the full amount awarded less the amount of the partial payment actually "made to the property owner.” (L 1971, ch 967.)

. Although this would seem to be quite a bargain for the State, the court cannot presume to interfere with the executive body on matters of finance.