OPINION OF THE COURT
Terry Jane Ruderman, J.
Petitioner seeks an order (special proceeding No. SP-120) for the distribution of an award, together with interest at a rate of 9%, for the appropriation of 80 Lake Street, White Plains, New York (hereinafter 80 Lake Street). Petitioner seeks a second order (special proceeding No. SP-121) for the distribution of the advance payment, together with interest at a rate of 9%, for the appropriation of 90 Lake Street, White Plains, New York (hereinafter 90 Lake Street).
80 Lake Street
Petitioner is the owner in fee of 80 Lake Street. On April 4, 2006, defendant State of New York (hereinafter defendant) filed map Nos. 650, 656 and 657, parcels 963, 969 and 970 to appropriate property located at 80 Lake Street. Defendant offered $1,369,500 as the value of the property appropriated. Petitioner agreed to this value and executed an agreement of adjustment (petitioner’s exhibit B in support of SP-120; verified reply, ex *348 hibit A).[1] The agreement of adjustment states that the compensation paid to petitioner represents “the total value of the property so appropriated and for all legal damages caused by such appropriation, including all damages ... to the remainder of the affected property” (petitioner’s exhibit B).
90 Lake Street
Petitioner is the owner in fee of 90 Lake Street. On April 4, 2006, defendant filed map Nos. 638 R-l, 639 R-l, parcels 951 and 952 to appropriate property located at 90 Lake Street. Petitioner executed an advance payment agreement for 90 Lake Street in the sum of $1,011,500 (exhibit F in support of SP-121).[2] Defendant offered this money to petitioner to satisfy “the total value of the property so appropriated and for all legal damages caused by such appropriation, including all damages . . . to the remainder of the affected property” (petitioner’s exhibit F).
Background
Prior to authorizing either payment, defendant identified several parties with a potential interest in the properties. Those parties identified the following parties: petitioner (fee interest in both properties); Mazur Brothers, Inc. (lessee of both properties); JPMorgan Chase[3] (mortgagee of both properties); City of White Plains (taxing authority of both properties); County of Westchester (taxing authority of both properties); petitioner’s attorney (attorney’s lien);[4] Thomas DiNapoli (Comptroller of the State of New York); and the Attorney General’s office (a necessary party pursuant to EDPL 304 [E] and Court of Claims Act § 23). As the interest that each of these parties held was not easily ascertainable, defendant deposited the monies for each of the parcels into an interest bearing account with the Comptroller’s office.
Mazur Brothers, Inc. is the commercial tenant at both properties. Mazur Brothers, Inc. has filed two claims (claim Nos. *349 112661, 112658) against defendant for damage to its trade fixtures as a result of the appropriation. The trade fixtures are located at 62 Lake Street but were used in conjunction with the business conducted at 80 Lake Street and 90 Lake Street. The fixtures have been rendered useless as a result of the taking (Mazur Bros., Inc. v State of New York, Scuccimarra, J., M-72859, claim Nos. 112661, 112658).
As motions to the pending claims, petitioner and Mazur Brothers, Inc. brought a distribution proceeding before Honorable Thomas H. Scuccimarra (M-72859). Judge Scuccimarra properly denied the motion as the distribution proceeding must be brought by a special proceeding (EDPL 304; Court of Claims Act § 23). Thereafter, petitioner and Mazur Brothers, Inc. brought a special proceeding before this court (special proceeding Nos. SP-115, SP-116) seeking distribution of the money in the appropriation accounts for 80 Lake Street and 90 Lake Street. Due to several procedural errors, the proceedings were denied and petitioner has brought the instant actions seeking distribution. Prior to allowing this proceeding to begin, the court directed petitioner to join an additional necessary party, to wit, the City of White Plains School District. The School District has been served and appears in these actions.
Analysis
Petitioner asks that the $1,369,500 on account for 80 Lake Street be distributed first to Chase in full satisfaction of the mortgage on 80 Lake Street and 90 Lake Street. Petitioner asks that the remainder of the account be distributed to petitioner. It is petitioner’s position that Mazur Brothers, Inc. has no interest in these funds because they were offered as part of the fee taking and not part of the trade fixture claim. Petitioner also argues that none of the taxing authorities have a right to any distribution of the money. According to petitioner, all taxes were current at the time of the taking on the appropriated portion of the property.
As to the $1,011,500 held for 90 Lake Street, petitioner asks that the entirety of the account be distributed to petitioner. The mortgage held by Chase will be satisfied by the funds held for 80 Lake Street. Again, it is petitioner’s position that Mazur Brothers, Inc. has no interest in these funds because they were offered as part of the fee taking and not part of the trade fixture claim. Petitioner also argues that none of the taxing authorities have a right to any distribution of the money. According to *350 petitioner, all taxes were current at the time of the taking on the appropriated portion of the property.
EDPL 303 states in pertinent part, “[t]he condemnor shall establish an amount which it believes to represent just compensation for the real property to be acquired. The condemnor shall make a written offer to acquire the property for one hundred per centum of the valuation so established.” It is the mandate of EDPL 303 that condemnor establish and offer an amount which it believes to represent just compensation (Matter of Lateral Sewer 2005 of Southwest Sewer Dist. in County of Suffolk v Martin Constr. Corp., 113 AD2d 799 [1985]). It is incumbent upon condemnor to value the property to be acquired, not the separate interests of the potential parties having an interest in the property acquired.
After condemnor makes its offer, the condemnee must make a choice. The condemnee may either accept the offer in full satisfaction of the appropriation or accept the offer as an advance payment and reserve its right to bring a court action to obtain just compensation (EDPL 304). In addition, the condemnee may either expressly reject the offer or have it deemed rejected if the condemnee does not notify the condemnor in writing within 90 days of the offer that the advance payment is accepted (EDPL 304 [B]). According to EDPL 304 (A) (4),
“upon the acceptance of the written or an adjusted offer, the condemnor shall enter into an agreement or stipulation with the condemnee providing for payment pursuant to such agreement, either as payment in full or as an advance payment. The right of the condemnee to the advance payment shall not be conditioned on the waiver of any other right.”
In the instant matter, defendant requested that petitioner enter into a written agreement as to the agreement of adjustment and the agreement for advanced payment. To satisfy the written agreements for payment, defendant requested that petitioner provide: “(1) completed payment vouchers, (2) an affidavit of title, (3) an executed assignment of claim and release by the Bank of New York, and (4) an executed assignment of claim and release by Mazur Brothers, Inc.” (Mazur Brothers, Inc. v State of New York, Scuccimarra, J., M-72859, claim Nos. 112661, 112658). Petitioner returned all of the paperwork to defendant except for the assignment of claim and release by Mazur Brothers, Inc.
EDPL 304 (E) (1) states in pertinent part:
*351 “In the event that an owner accepts the offer as payment in full or as an advance payment for property in an acquisition under the court of claims jurisdiction pursuant to subdivision (A) of section five hundred one of this chapter and the attorney general determines that there is a conflict of title or a conflict arises so that he is unable to make certification of the person or persons legally entitled to the amount payable under an agreement adjusting all legal damages caused by any such acquisition, the condemnor shall request the comptroller to, and the comptroller shall, deposit the amount payable under such agreement in a special interest bearing account ... to be distributed as ordered by the court of claims on application of any person claiming an interest in the amount deposited. After making the deposit as herein provided, the attorney general shall notify all parties claiming an interest in the fund that the amount payable thereunder has been deposited and is subject to an application by an interested person or persons to a distribution proceeding. The procedure on such an application shall be the same as provided in section twenty-three of the court of claims act respecting the distribution of deposited court of claims awards, except that the proceeding shall be conducted in the court of claims, in the district in which the appropriated property is located . . . The determination of the court of claims and final judgment of distribution shall, unless set aside or reversed on appeal, be final and conclusive upon the owners or other persons claiming any interest in or lien or encumbrance on the property so appropriated and the amount deposited. No judgment of distribution shall be made unless the court shall first obtain personal jurisdiction over all persons certified by the attorney general as having or claiming to have an interest in the fund.”
It is by this procedure that this court, having obtained jurisdiction over all interested parties, will determine and order the distribution of the payment for 80 Lake Street and the advance payment for 90 Lake Street. The interested parties are Mazur Brothers, Inc., the various taxing authorities, and Chase.
Mazur Brothers, Inc. indicates that it has no objection to the distribution of the money on each of the properties as asked for *352 by petitioner. Mazur Brothers, Inc.’s position is that it has no interest in the offers made as to the fee owned by petitioner. Mazur Brothers, Inc. states that its only interest is in the trade fixture claims (SP-120 and SP-121, verified answer of Mazur Brothers, Inc. 1i 3).
In opposition to Mazur Brothers, Inc.’s argument, defendant contends that the offer made for each of the appropriations was the highest offer of compensation for 100% of the property acquired, pursuant to EDPL 303, and inclusive of fixtures. Defendant posits the offers were inclusive of the direct and indirect damages to the real property as well as any trade fixtures attached to or on the properties.
It is the constitutional mandate for the government to pay just compensation for property appropriated through eminent domain. The compensation shall be measured by determining what the owner has lost (Rose v State of New York, 24 NY2d 80 [1969]). The court must determine the value of the property taken and then divide that value among those whose interests have been extinguished by the appropriation (Traendly v State of New York, 51 AD2d 489 [1976], affd 43 NY2d 804 [1977]). In Great Atl. & Pac. Tea Co. v State of New York (22 NY2d 75, 84 [1968]), the Court held that
“where there are two or more interests or estates in a condemned parcel, the proper mode of assessing damages is to ascertain first the damage to the fee as if it were unencumbered, and then to apportion that amount among all of the estates and interest which are held in the property (Matter of City of New York [Mott Haven Houses], 33 Misc 2d 808, affd. 16 A D 2d 637, affd. 13 N Y 2d 959; Matter of City of New York [Allen St.], 256 N. Y. 236, 242-243). A lease is an interest in property which is compensable if the property which is subject to a lease is condemned (Matter of Trustees of New York & Brooklyn Bridge [Clark], 137 N. Y. 95, 97; Folts v. Huntley, 7 Wend. 210, 216; Matter of Daly, 29 App. Div. 286, 289-290; Pomeroy v. State of New York, 18 Misc 2d 377, 380). The damages to which a lessee is entitled are generally the value of the leasehold (Matter of City of New York [Delancey St.], 120 App. Div. 700, 708). In computing the value of the leasehold, the court must first ascertain the fair rental value of the premises and then deduct therefrom the actual rent reserved for the remaining period or term of the lease.”
*353 “An appropriation of land by the State, unless qualified when made, is an appropriation of all that is annexed to the land, whether classified as buildings or as fixtures, and the value of the fixtures must be included in determining the total value of property so appropriated (Jackson v. State of New York, 213 N. Y. 34). They are part of the realty so long as they remain fixtures (Matter of Willcox, 165 App. Div. 197, 200)” (Marraro v State of New York, 12 NY2d 285, 292 [1963]).
The tenant has a right to compensation for fixtures installed on the leasehold if, but for the fact the property was condemned, he would have had the right to remove the fixture at the end of the lease (Matter of City of New York [G & C Amusements], 55 NY2d 353 [1982]; Matter of City of New York [Glantz], 55 NY2d 345 [1982]; Matter of City of New York, 256 NY 236 [1931]).
“The city must pay the value of what it takes. To the extent that the value of the real property as a whole is enhanced by the fixtures annexed thereto, the value of the fixtures must be included in what the city pays, and the tenant is entitled to part of the award, not because the fixtures added to the value of the leasehold, but because they belonged to him and their value enters into the value of what the city has taken” (Matter of City of New York, 256 NY 236, 249 [1931]).
In Lewiston v State of New York (17 AD2d 912 [1962]), tenants had not been made a party to an action in which an award for a taking had been made to the fee owner. The Court of Claims dismissed the action because an equivalent value for the fixtures had already been allowed to the landlord. The Appellate Division remanded the matter for a determination of the value of the tenants’ fixture claim. The award to the landlord was ordered to be held pending the determination of the tenants’ claim.
A fixture is part of the real estate; its contribution to the value of the real estate is included in the estimation of the value of the property. However, a trade fixture is not part of the real estate. A trade fixture is an article owned and attached to a rented space of a building by a tenant and used in conducting business (Appraisal Institute, The Appraisal of Real Estate, at 9).
The landlord and tenant are free to allocate the ownership of fixtures and condemnation awards by agreement (Matter of City *354 of New York, 20 Misc 3d 1128[A], 2008 NY Slip Op 51658[U] [2008]). Even in the event a tenant has waived or contracted away his right to the leasehold claim, the tenant is not precluded from asserting a trade fixture claim (Matter of New York State Urban Dev. Corp. v Nawam Entertainment, Inc., 57 AD3d 249 [2008]).
There is a three-prong test to determine if an item qualifies as a trade fixture (see Rose v State of New York, 24 NY2d 80 [1969]; see also Matter of City of New York [Kaiser Woodcraft Corp.], 11 NY3d 353 [2008]; Marraro v State of New York, 12 NY2d 285 [1963]). The first prong addresses how the item is annexed to the realty. Generally, if the item can be removed without causing serious damage to the realty itself, then the item will qualify as a trade fixture. The second prong requires that the item be adaptable. If an item is constructed for use in a specific building or it is installed to carry out the purpose of the construction of a building, then the item is part of the realty and is not a trade fixture. The third prong addresses the intention for the item’s permanence when it was installed. If the tenant reserves the right to remove the item at the end of the lease, then the item may qualify as a trade fixture. However, if the item becomes the property of the landlord, then the item is part of the realty.
In the instant matter, this court is unaware of the nature of the items claimed to be trade fixtures. Further, it is not an issue for this court to decide. As previously stated, Mazur Brothers, Inc. has trade fixture claims pending before Judge Scuccimarra. Mazur Brothers, Inc. will offer proof as to the trade fixtures in those matters. It is sufficient in this proceeding that Mazur Brothers, Inc. has waived any interest it might have in the award for 80 Lake Street and the advance payment for 90 Lake Street. Thus, if Judge Scuccimarra determines that the items are not trade fixtures but are fixtures, which are part of the realty, then Mazur Brothers, Inc. will have waived its right to recover for its interest in the items.
It is undisputed that Chase holds a mortgage on both properties which are the subject of defendant’s takings. According to Chase, the mortgage covers 62, 80 and 90 Lake Street, White Plains, New York, equally. While the mortgage covers each of the properties equally and only two of those properties were impacted by the takings, petitioner, nonetheless, seeks to pay off the remainder of the mortgage with the proceeds from 80 Lake Street. The original mortgage in May 2002 was in the *355 principal sum of $1,000,000. Petitioner indicates that Chase was owed $403,348.09 as of September 28, 2007 (affirmation in support of SP-120 1f 24). In its answering papers, Chase indicates that as of May 1, 2008, the payoff figure was $382,573.50.[5] Chase joins in petitioner’s request for the mortgage to be paid. Chase requests that the court order payment of an amount sufficient to satisfy the mortgage upon presentation by Chase of a payoff statement and any other documents needed by defendant.
The court finds that Chase is entitled to be paid in full. However, while the parties request that the entire amount of Chase’s payment come from the agreement of adjustment from 80 Lake Street, the court hereby orders that the payment to Chase be taken in equal amounts from account numbers W0XXXX3 and W0XXXX2.[6] In addition to the principal and interest, the court orders the payment of the attorneys’ fees in the sum of $7,734 to be paid in equal amounts from account numbers W0XXXX3 and W0XXXX2. The total sum paid to Chase, inclusive of principal, interest and attorneys’ fees, shall be credited against the fee interest of petitioner. Payment to Chase shall be made as soon as practicable after Chase has provided documentation sufficient to satisfy the Comptroller’s office.
The last issue to be determined is the interest of the taxing authorities, to wit, the City of White Plains; the City of White Plains School District; and the County of Westchester.[7] Petitioner argues that at the time of vesting no taxes were due on either 80 or 90 Lake Street. Therefore, it is petitioner’s position that the taxing authorities have no right to either the award for 80 Lake Street or the advance payment for 90 Lake Street.
In opposition, the taxing authorities assert a claim for unpaid taxes and ask for top priority in payment, as in a foreclosure proceeding. The taxing authorities assert that petitioner has not paid taxes on the remaining property for the 2006/2007 and *356 2007/2008 City of White Plains taxes; 2007 County of Westchester taxes; and the 2006/2007 and 2007/2008 City of White Plains school taxes. The taxing authorities concede petitioner was taxed on the properties as if the appropriated portion had not been taken and the tax rolls do not reflect the appropriate reduction. According to counsel for the taxing authorities, it has been recommended that the tax rolls be corrected. As of the submission of the taxing authorities papers, the correction had not been made. The taxing authorities argue that “[a]t such time as the tax rolls are corrected, the taxes due and owing will be a lien on the real property” (taxing authorities’ verified answer to SP-120 11 21). The taxing authorities ask that an order be entered providing for distribution of the monies providing for the payment of all outstanding real property taxes.
The court is not faced with the usual situation in regard to tax liens and condemnation awards. Typically, when dealing with unpaid taxes, there is an outstanding tax lien at the time of appropriation.
“It is well established that, upon the vesting of title in a condemnation proceeding, all lien interests in the subject property by virtue of mortgages, unpaid taxes, or unsatisfied judgments, are extinguished (see, Matter of County of Nassau [Gelb— Siegel], 24 NY2d 621, 626; Copp v Sands Point Mar., 17 NY2d 291, 293; Muldoon v Mid-Bronx Holding Corp., 287 NY 227; Matter of Barber [State Comptroller], 274 App Div 712; Irving Trust Co. v Hughes, 239 App Div 74, 76). However, substituted in their place are equitable liens against the condemnation award to the extent of each lien and interest thereon as of the date title vested (see, Matter of County of Nassau [Gelb — Siegel], supra; Copp v Sands Point Marina, supra). Accordingly, by operation of law, the property taxes due and owing to the condemnor were properly deducted from the condemnation award” (Matter of County of Rockland [Kohl Indus. Park Co.], 172 AD2d 607, 609 [1991]; see also Matter of County of Nassau [Gelb — Siegel], 24 NY2d 621 [1969]).
In the instant matter, there were no tax liens at the time of the appropriation which converted from a lien against the property to a lien against the condemnation award. At the time of vesting, no tax liens existed. The taxing authorities ask the court to assert a subsequent, unsettled tax lien, against *357 petitioner’s accounts. The court declines. As no lien existed at the time of vesting, the taxing authorities have no interest in the award for 80 Lake Street or the advance payment for 90 Lake Street. It is from the remainder of the properties the taxing authorities must seek satisfaction.
Finally, petitioner asks the court to award interest of 9% for the award and advance payment from the vesting date to the date of payment. “It is well established that in condemnation proceedings the constitutional requirement of just compensation necessarily includes a sum in addition to the bare value of the property to account for the delay between the taking and the ultimate payment to the property owner” (Matter of City of New York [Brookfield Refrig. Corp. — Zoloto], 58 NY2d 532, 536 [1983]).
In regard to 80 and 90 Lake Street petitioner signed agreements with defendant.[8] The agreements, as executed by the parties, address the question of interest. The agreements indicate that petitioner shall be paid interest at a rate of 9%, under current law (CPLR 5004). However, the agreements further state that in the event the award and advance payment are deposited into a special account then interest shall be paid at a rate determined by the Comptroller of the State of New York and the interest rate may be less than 9%.
Petitioner argues defendant unjustifiably and without a court order deposited the money into a special account with the Comptroller’s office. Petitioner argues defendant deposited the money to halt its obligation to pay interest (EDPL 304 [E]) without a true controversy over the distribution of the award or the advance payment. Petitioner posits defendant has created an unnecessary controversy concerning the trade fixtures. Petitioner and Mazur Brothers, Inc.[9] indicate defendant has never made an offer in regard to the trade fixtures. Further, petitioner indicates defendant will not release the award or advance payment because petitioner has failed to obtain an assignment and release of the trade fixture claim of Mazur Brothers, Inc. (exhibit J in support of SP-120; exhibit I in support of SP-121). Petitioner obtained all other releases and assignments demanded by defendant.
*358 Defendant challenges the statutory interest of 9% on the funds on deposit in the special account. Defendant submits that the Comptroller has a right to set a lower interest rate pursuant to the award agreement and the agreement for advance payment.
In Bobwin v State of New York (claim No. 47781, Lengyel, J.), claimant (Bobwin Real Estate Corp.) rejected defendant’s offer as full payment and accepted it as an advance payment. Defendant required several releases to authorize payment. One of the releases requested was from Botto Bros. Hardware, Inc. (hereinafter Botto), a tenant of claimant. Claimant and Botto were owned by the same individuals. Botto had already filed a claim against defendant for trade fixtures. Botto could not sign a general release in favor of Bobwin Real Estate Corp. without forfeiting its claim against defendant. Thus, claimant could not supply the necessary release for defendant to authorize release of the advance payment. Without supplying the general release demanded, claimant was faced with suspension of interest on the advance payment. Judge Lengyel stated claimant was
“the modern counterpart of the seafarer who attempted to steer a course between Scylla and Charybdis. If he refuses to sign the contract, he is faced with suspension of interest after the mandated 90 day period. If he signs the contract and cannot obtain the required releases, he is faced with a suspension of interest after the 30 day period . . . .We do not find the terms of said partial payment agreement to be ‘fair, honest and reasonable.’ Furthermore, we find that said partial payment agreement, in the instance of a fee owner with tenants who either have a bona fide claim or, in what amounts to legal extortion, contend they have a claim, is a violation of the transcendent requirements that claimants shall be paid just compensation. See, McKinney’s Const. Art. 1 § 7. We find the partial payment agreement entered into between the State and Bobwin Real Estate Corp., Inc. a nullity and legally unenforceable. We find said partial payment agreement in violation of the Constitution of the State of New York. We reiterate our direction that the State shall pay the interest found due upon this award by this Court.”
In Sydney Family Corp. v State of New York (99 Misc 2d 731 [1979]), claimant was faced with several interested parties, all *359 of whom refused to cooperate with claimant and supply general releases. In Sydney, Justice Silverman held that “the contract at bar, to the extent that it is interpreted to provide for an interest suspension, is an adhesion contract and unenforceable” (at 736).
In the case at bar, the agreements (for 80 and 90 Lake Street) state:
“2. Interest shall be paid at a rate established by statute. Current law applying to your claim requires that, unless the State has deposited the amount you are entitled to receive under this Agreement into a Special Eminent Domain Account (the ‘Special Account’), the State will pay interest at a rate not to exceed 9 per cent per annum (simple interest and not compounded). If your money has been deposited into the Special Account, you will be paid interest at a rate to be determined by the State comptroller based upon the rate of interest earned by the Special Account during the period of deposit. Please note that the rate of interest earned by the Special Account may be significantly less than 9%.
“3. The State is not required to pay interest, and interest will be suspended on the amount due under this Agreement, if:
“c. You fail to return the agreement and/or the closing papers provided to you, or the other proofs required by the State . . . within 90 days from the date upon which you receive the Closing Papers, and your failure is unreasonable.” (Exhibit B in support of SP-120; exhibit F in support of SP-121 [emphasis added].)
This court rejects that portion of the agreement which indicates defendant is not required to pay interest as unenforceable. EDPL 514 (A) states, “[sjubject to the provisions of this chapter, a condemnee shall be entitled to lawful interest from the date of acquisition to the date of payment.” Further, this court finds petitioner’s failure to provide the assignment and release of Mazur Brothers, Inc. to defendant to be reasonable. Mazur Brothers, Inc., while it consists of the same individuals as petitioner, is a separate legal entity not under the control of petitioner. Mazur Brothers, Inc., in order to provide the assignments and releases demanded by defendant, would have forfeited its right to pursue its fixture claims against defendant.
While it is clear, at this time, that Mazur Brothers, Inc. waives any right it has to its leasehold interest in the award for 80 *360 Lake Street and 90 Lake Street, the same could not be said when defendant deposited the award and advance payment into the special accounts. At that time, Mazur Brothers, Inc. still had an interest in the award and advance payment for the realty at 80 and 90 Lake Street, respectively. Without a release of the realty portion of the award and advance payment by Mazur Brothers, Inc., defendant correctly deposited the monies into the special accounts with the Comptroller (EDPL 304 [E] [1]). While there is no evidence that defendant made an offer on the fixture claim, there is also no evidence that defendant would not negotiate the trade fixture claim as an exception to the demand for assignments and releases. Without such evidence, this court is adverse to disturbing the terms of the contract relating to the depositing of the monies into the special account (but see Sydney Family Corp. v State of New York, 99 Misc 2d 731 [1979]).
Thus, the court holds that interest shall not be suspended on the award for 80 Lake Street or the advance payment for 90 Lake Street, and interest shall be paid at a rate of 9% from the date of vesting until said monies were deposited into account numbers W0XXXX3 and W0XXXX2, and thereafter at an interest rate set by the Comptroller until payment.
Based upon the foregoing, the court orders: payment to Chase, taken in equal amounts from account numbers W0XXXX3 and W0XXXX2, payment to Chase shall be made as soon as practicable after Chase has provided documentation sufficient to satisfy the Comptroller’s office.
In addition to the principal and interest, the court orders the payment of Chase’s attorneys’ fees in the sum of $7,734 to be paid in equal amounts from account Nos. W0XXXX3 and W0XXXX2; the remainder of the award for 80 Lake Street and the advance payment for 90 Lake Street shall be distributed directly to petitioner.

. Petitioner has included a second copy of the agreement of adjustment in its verified reply because the original exhibit in support of SP-120 was partially missing due to a copying error in petitioner’s office. For sake of brevity, the court will only refer to exhibit B in support of SP-120.

. Petitioner has a claim pending for this appropriation (claim No. 112659).

. This lienholder was initially known as the Bank of New York.

. Petitioner’s attorney waives an alleged interest in the award for 80 Lake Street and advance payment of 90 Lake Street (SP-120, exhibit I) affirmation of Michael Rikon it 4; SP-121, exhibit O, affirmation of Michael Rikon 114).

. This sum includes principal of $374,633.57, interest of $205.93, and attorneys’ fees of $7,734 (Chase answer 11 8).

. These are the accounts set up by the Comptroller’s office for 80 Lake Street and 90 Lake Street, respectively.

. The City of White Plains is represented by its Corporation Counsel. Neither the County of Westchester nor the City of White Plains School District has appeared in this action. However, the court notes the City of White Plains is the collecting agent for itself, the County of Westchester and the City of White Plains School District (verified answer of City of White Plains H 17) and asserts unpaid taxes for these entities as noted in the main body of this decision.

. As previously noted, petitioner executed an award agreement for 80 Lake Street (exhibit B in support of SP-120) and an agreement for advance payment for 90 Lake Street (exhibit F in support of SP-121).

. Verified answer of Mazur Brothers, Inc.